Jean DOBLER, Appellant,

v.

Oleta STORY, Appellee.

No. 16053.

United States Court of Appeals
Ninth Circuit.

June 19, 1959.

O. Vincent Bruno, Noel B. Gassett, San Jose, Cal., for appellant.

Joseph F. Lewis, William J. Fernandez, Lewis, Scherr & Fernandez, Sunnyvale, Cal., for appellee.

Before FEE, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellee, plaintiff below, is a resident and citizen of the State of California. The appellant, defendant below, is a resident and citizen of the State of Texas. The automobile collision which gave rise to the litigation occurred in the San

Francisco Bay area, State of California, within the jurisdiction of the United States District Court for the Northern District of California, Southern Division. The amount in controversy exceeded $3,-000 plus interest and costs. The district court had jurisdiction of the controversy under Title 28 U.S.C.A. § 1332(a) (1). The jurisdiction of this Court has been properly invoked under Title 28 U.S.C.A. § 1291.

■ Since federal jurisdiction depends upon diversity of citizenship, we are to be governed in our decision in this case by the laws of the State of California as declared by the Supreme Court of that State. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The facts of this case are not in dispute. In reviewing the facts we will refer to the parties by their designations in the district court. On October 2, 1955, a collision occurred between an automobile operated by plaintiff's husband, in which plaintiff was riding, and an automobile operated by the defendant. The district court found that the accident resulted directly and proximately from the carelessness and negligence of the defendant. On October 4, 1955, plaintiff reported this accident to an agent of her own insurance company and filled out an accident report for it. At the time this report was made plaintiff was suffering from headaches and neck pain, resulting from the accident. Later the plaintiff received through the mails from the agent or representative of her own insurance company a document entitled "Release of All Claims". We are unable to determine from the record the exact date on which plaintiff received such document. In this regard plaintiff testified that she had ample opportunity to read the document. In any event, on November 29, 1955, she and her husband signed the document, and secured the signatures of two persons as witnesses. On the same day plaintiff and her husband acknowledged their signatures before a notary public in and for the State of California, County of Marin. This document, executed and acknowledged by plaintiff and her husband, reads in full as follows:

"Release of All Claims

"For and in consideration of the payment to me/us of the sum of three hundred thirty and $^{80}\!/_{100}$ dollars, the receipt of which is hereby acknowledged, I/we, being of lawful age, do hereby release, acquit, and forever discharge Jean I. Dobler, his/her heirs, executors and assigns, from any and all liability now accrued or hereafter to accrue on account of any and all claims or causes of action which I/we now or may hereafter have for personal injuries, damage to property, loss of services, medical expenses, losses or damages of any and every kind or nature whatsoever, now known or that may hereafter develop, by me/us sustained or received on or about the 2nd day of October, 1955, through automobile accident in or near Greenbrae intersection, Marin County, California, and I/we hereby declare that I/we fully understand the terms of this settlement and voluntarily accept said sum for the purpose of making a full and final compromise, adjustment and settlement of the injuries and damages, expenses and inconvenience above mentioned.

"It being further agreed and understood that this settlement is a compromise of a disputed claim and that the payment is not to be construed as an admission on the part of the party or parties hereby released of any liability whatever in consequence of said accident.

"I/We further state that the foregoing release has been carefully read and I/we know the contents thereof and have signed the same as my/our own free act and have not been influenced in making this settlement by any representation of the party or parties released.

"Executed at San Rafael, this 29th day of November, 1955.

"Witnesses:
Mrs. Dawn E. Bowen
Address
4136 Redwood Hwy.,
San Rafael, Calif.

Dorothy McDonald
Address
4136 Redwood Hwy.,
San Rafael, Calif.

Caution; Read Before Signing Below

Thurman Story
Oleta Story
American Insurance Co.
By E. Godsall, General Adjuster

Acknowledgment

State of California,
County of Marin.

"Before me, this 29th day of November, 1955, personally appeared Thurman Story and Oleta Story, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he/she understands its contents and executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office this 29th day of November, 1955. Helen Ruttledge, Notary Public—In and for the State of California, County of Marin."

The record is clear that plaintiff and her husband had ample time to read the document before its execution and acknowledgment; she was not forced to sign the document; she was able to read and understand the document; and she signed it freely and willingly. After completion of the execution and acknowledgment of the document plaintiff mailed it to the agent or representative of her own insurance company. Sometime after the execution of the release plaintiff received a check from her insurance company in the sum of $330.81. The check was dated January 12, 1956, and was made payable to plaintiff and her husband. They endorsed this check and mailed it to her own insurance company, and subsequently received a check from her own insurance company in the amount of $100, bearing the same date. At no time did the defendant, nor anyone purporting to represent her, communicate with the plaintiff in regard to the accident or to the release.

On December 25, 1955, plaintiff for the first time following the accident consulted a physician complaining of headaches. Her next visit to a physician occurred in September of 1956. On September 27, 1956, plaintiff filed her complaint for damages in the district court against the defendant. The defendant by answer denied the material allegations of the plaintiff's complaint, and as a separate and distinct defense alleged that on the 29th day of November, 1955, the plaintiff for valuable consideration released the defendant from all liability to the plaintiff of any and all claims of plaintiff against the defendant, including the alleged claim set forth in plaintiff's complaint.

Following trial, the district court awarded plaintiff judgment against the defendant in the sum of $2,400 general damages and $265 special damages. From this judgment the defendant has appealed to this Court.

The specifications of error relied upon are (1) error of law by the district court in finding the release signed by plaintiff did not bar recovery by her in the action; (2) error of the trial court in admitting parol evidence to vary the terms of the release.

Over specific objections of defendant's counsel, the district court permitted plaintiff to testify that she did not read the release; that she thought she was signing a document which only released her own insurance company for the damages sustained to plaintiff's automobile; and that in signing the release she trusted her own insurance company or its representative.

Plaintiff does not claim on this appeal that the signing of the release was the result of any fraud, trickery, deceit, im-

position, representation, inducement, or overreaching on the part of the defendant, or any person representing or purporting to represent the defendant. There is no contention that any close, friendly or confidential relationship existed between the plaintiff and the defendant. While the record shows that the plaintiff had attended school for only eight years, the record discloses that she had been married for sixteen years, and was the mother of two children, the oldest of whom was 15 years and the youngest was nine. Plaintiff's husband testified that his occupation was that of an op-·erating engineer, and that he had been so employed for 25 years. He further testified that his wife brought the release for him to look at, that he did not specifically read it, although he was able to read, and that his wife just "outlined about what it was * * * and I was busy and I jumped in the car with her and ran down there and signed the thing and back on the job."

There is no contention on the part of plaintiff that the release contained words that she could not understand, or that any part of the language of the release was ambiguous. Plaintiff freely admitted that she could have understood all ·of the terms of the release if she had read it. In fact, during the trial of the action plaintiff read the release while in court and stated that she understood what it said "when I read it in court".

A careful review of the record reveals that the only "mistake" which occurred was the failure of the plaintiff to read the short, clearly expressed, and easily understood language of the release, if such conduct on the part of plaintiff can be defined as a "mistake". It is difficult to understand how the most casual glance at the release would fail to disclose the warning contained in the bold type and appearing as follows "Caution: Read Before Signing Below" immediately before the place for signature.

There is no dispute between the parties on this appeal that the general rule of law in California is that when a ,person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provision is contrary to his intentions or understanding. In Knox v. Modern Garage & Repair Shop, 68 Cal.App. 583, 229 P. 880, 881, it is said in the opinion, where the action was upon a contract: "In such an action a party cannot be heard to say that he had not read the same and did not know the contents thereof. Where a party to a written contract wishes to avoid liability thereon on the ground that he did not know its contents, the question, in the absence of misrepresentation, fraud, undue influence, and the like, turns on whether he was guilty of negligence in signing without such knowledge. When he is negligent in not informing himself of the contents, and signs or accepts the agreement with full opportunity of knowing the true facts, he cannot avoid liability on the ground that he was mistaken concerning such terms in the absence of fraud or misrepresentation."

To the same effect is the opinion in Greve v. Taft Realty Co., 101 Cal.App. 343, 281 P. 641. See also George v. Bekins Van & Storage Co., 33 Cal.2d 834, 205 P.2d 1037. In Palmquist v. Mercer, 43 Cal.2d 92, at page 98, 272 P.2d 26, at page 30, the court stated, "Admittedly plaintiff was not prevented from reading the release, and whether he did or not would be immaterial. As stated in Smith v. Occidental & Oriental Steamship Co., 99 Cal. 462, at pages 470–471, 34 P. 84, [at page] 86. 'The general rule is that, when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding'. See also, Nichols v. Hitchcock Motor Co., 22 Cal.App.2d 151, 153 et seq., 70 P.2d 654."

Plaintiff seeks to avoid the effect of this almost universally declared doctrine by claiming that her consent was not free because obtained by mistake. California Civil Code, Section 1566, subdivision

278

(1); Section 1567, Subdivision (5). Plaintiff then argues that she never consented to enter into any contract, releasing all of her claims against the defendant; that she was mistaken as to what was meant by the contract; and that the release may not be considered to be in satisfaction of anything not consented to by the plaintiff. In support of this argument plaintiff cites Meyer v. Haas, 126 Cal. 560, 58 P. 1042, and Jordan v. Guerra, 23 Cal.2d 469, 144 P.2d 349. Neither case supports plaintiff's argument. The head note to the Meyer case is as follows: "A document purporting on its face to be a full settlement and discharge of the defendants from all claim of damages to the plaintiff resulting from personal injuries caused by their negligence, which was signed by the plaintiff, a foreigner, speaking English imperfectly and not able to read it at all, at the instigation of his physician, who was in the employ of and acted as agent for the defendants in procuring the settlement, and who represented to the plaintiff that the document was a mere receipt for any claim he might have for loss of time, is not a bar to an action for the injuries suffered by the plaintiff to his person, although the plaintiff never returned or offered to return the consideration for the alleged settlement." In the Jordan case, the court stated, 23 Cal.2d at page 475, 144 P.2d at page 352: "In any case it is for the trier of the facts to determine what the plaintiff understood was covered by the writing and *whether his understanding different from the writing was induced by the defendant. If a misconception be found and that the defendant was responsible therefor,* the contract insofar as it purports to release claims other than those understood by the plaintiff to be included, is ineffective to that extent, and rescission and tender as to the excluded items are unnecessary." (Emphasis added) Plaintiff also relies heavily on the case of Reid v. Landon, 166 Cal.App.2d ——, 333 P.2d 432. At page —— of 166 Cal.App.2d, at page 438, of 333 P.2d the court stated: "It is clear that defendant's mistake was due to conduct that constituted neither a neglect of duty or an error in judgment and was not 'preposterous or irrational,' but a natural and reasonable mistake *due largely to defendant's reliance on the plaintiffs' representations* that the document reflected the terms of her original agreement. Having been told by plaintiffs the letter agreement had been prepared by her counsel, he never having advised her of the change; *believing plaintiffs' representations* that the document embodied the terms originally agreed upon and not understanding the difference between an 'option' and a 'first right of refusal,' defendant signed the option letter agreement in the mistaken belief that *as a matter of fact she was signing quite another document.*" (Emphasis added)

█ Our review of the decisions cited in the briefs and our own research has led us to the conclusion that the law of the State of California in an action at law is that when a person, not under legal disability, has the opportunity to read and has a capacity for reading and understanding a plain unambiguous instrument signs it, he is bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding, in the absence of any relationship of trust or confidence between the parties or in the absence of fraud, imposition, deceit, misrepresentation or like conduct practiced by the other party to the transaction.

We are, therefore, compelled to hold that the district court was in error in finding that the release signed by the plaintiff did not bar recovery by her in the action.

█ Ancillary to the foregoing statement, we hold that the district court was in error, under the undisputed facts, in admitting testimony as to what plaintiff understood the unread release to mean. Section 1625, California Civil Code; Section 1856, California Code of Civil Procedure; Guerin v. Kirst, 33 Cal. 2d 402, 202 P.2d 10, 7 A.L.R.2d 922.

In view of our conclusion that the judgment of the district court must be-

reversed for the reasons appearing above, we deem it unnecessary to discuss the contention of the defendant that plaintiff's failure to comply with the provisions of the California Civil Code relating to rescission of a contract was fatal to the maintenance of plaintiff's action.

The judgment of the district court is reversed.