SAMUEL H. HICKS, Plaintiff, v. WALTER J. SOROKA, Defendant.

(*January* 22, 1963.)

LYNCH, J., sitting.

*Sidney J. Clark* and *Joseph A. L. Errigo* for Plaintiff.

*Clement C. Wood* (of Allmond and Wood) for Defendant.

Superior Court for New Castle County, No. 878, Civil Action, 1961.

Lynch, J.:

The plaintiff was struck by an automobile in the southbound lane of Route 13, near Townsend, Delaware, on or about October 5, 1960. The plaintiff thereafter entered into negotiations for settlement, signed a release and received payment of $900.00, in form of a check. The release was in the following form:

### "Release and Settlement of Claim

"For the sole consideration of Nine Hundred and ———— 00/xx Dollars, to me/us in hand paid, the receipt of which is hereby acknowledged. I/we Samuel H. Hicks Releasor(s), being over 21 years of age, do hereby release, and forever discharge Walter J. Soroka, Releasee(s) and all other persons, firms or corporations from any and all claims, demands, rights, actions or causes of action on account of or in any way growing out of any and all personal injuries (and consequences thereof, including death, and specifically including, also, any injuries which may exist, but which at this time are unknown and unanticipated and which may develop at some time in the future, and all unforseen developments arising from known injuries) and any and all property damage resulting or to result from an accident that occurred on or about the 15th day of Oct. 1960, and do hereby for myself/ourselves, my/our heirs, executors, administrators, successors, assigns and next of kin covenant to indemnify and save harmless the said above-named Releasee(s) and said persons, firms or corporations above-referred to, from all claims, demands, costs, loss of services, expenses, and compensation on account of or in any way growing out of said accident or its results both to person and property.

"It is expressly understood and agreed that the accept-

ance of the said above amount is in full accord and satisfaction of a disputed claim, and that the payment of the said above amount is not an admission of liability.

"In Witness Whereof, I/we have hereunto set my/our hand and seal this 2nd day of May 1961.

"Signature

"/s/Samuel H. Hicks   (L.S.)

"————————————(L.S.)

"CERTIFICATE OF WITNESSES

"We certify that this release was signed in our presence by the above who acknowledged that he/they understood it fully.

"Witness /s/ Sarah L. Briscoe

"Address Townsend Delaware"

It appears that Sarah Briscoe who witnessed the execution of the release is plaintiff's sister. She has filed no affidavit in the case.

On the reverse side of the check which was paid to plaintiff as part of his execution of the above quoted release the following legend appears:

"ENDORSEMENT BY THE PAYEE CONSTITUTES A COMPLETE RELEASE AND SETTLEMENT IN FULL SATISFACTION OF THE CLAIM OR ACCOUNT SHOWN ON REVERSE HEREOF

"/s/ Samuel H. Hicks"

The check was cashed on May 2, 1961. It is to be noted that plaintiff filed his complaint on June 9, 1961; it is to be further noted that plaintiff did not, prior to institution of his suit, return the $900.00 which he had been paid. The execution and delivery of the release and the endorsement of the

check are pleaded by defendant as his Second Affirmative Defense. Plaintiff filed no response to the pleading thereto.

Rule 8(c), Rules of the Superior Court, *Del. C.*, requires a party to "affirmatively" plead "release, * * * and any other matter constituting an avoidance or affirmative defense". Rule 7(a), Rules of the Superior Court, provides there "shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; * * *. No other pleading shall be allowed, except that the court may order a reply to an answer * * *." Rule 8(d), Superior Court Rules, provides that averments in a pleading to which no responsive pleading is "* * * permitted shall be taken as denied or avoided". As stated above, Rule 7(a) flatly prohibits the filing of any pleadings other than a complaint and answer and a reply to a counterclaim "* * * except that the court may order a reply to an answer * * *"; see, however, Rule 5(c), which seems not applicable to our case.[1]

Under our present Rules, after the defendant had pleaded release in his answer it was not clear from the record just what the issue would be with respect to the release, *i.e.* whether plaintiff denied execution of the release or would seek

---

[1]Whether any reply should be required to an affirmative defense, which must be pleaded by Rule 8, Superior Court Rules, (and its counterpart in the Federal Rules of Civil Procedure) is considered and discussed in Vol. 1A Barron and Holtzoff (Wright Ed.), *Federal Practice and Procedure,* §§ 278 and 279.

It is interesting to note that the learned author states (page 166):

"Generally, a failure to plead an affirmative defense results in the waiver of that defense and it is excluded as an issue in the case. * * *." Later in the same section, at pages 167/168, the statement is made:

"* * *. In proper cases amendments of the pleadings to set out affirmative defenses are allowed. * * *."

At an earlier place in the same work (page 9) discussion is to be found in Section 242 of "the very important purpose [a statement of facts serves] of informing the adverse parties of the nature of the claim or defense asserted * * *".

On page 10, speaking of the "flat prohibition against any pleadings other than those listed" in Rule 7(a), the learned author says of "the closing of the pleadings", as provided by the Rules, that it aids

to avoid its effect. In my opinion defendant was required to take one of the suggested courses, such as moving the Court to require plaintiff to file a reply, as is provided by Rule 7(a).

The decisions of *Columbia Pictures Corporation v. Rogers et al.*, 81 F. Supp. 580, 584 (Dist. Ct. S. D. West Va., 1949) and *Monk v. United Life & Accident Ins. Co. of Concord, N. H.*, 2 F. R. D. 372 (Dist. Ct. E. D. Pa., 1942), when compared, well illustrate when a Court should order the filing of a reply to an affirmative defense and where one is not necessary.

Examination of the pleadings in the Prothonotary's Office of the case of *McGuirk v. Ross*, Del., 166 A. 2d 429 (Sup. Ct., 1960), discussed hereafter, revealed that on defendant's motion the Court ordered the plaintiff in that cited case to reply to the affirmative defense of release pleaded by defendant. Such reply showed that defendant had only reimbursed plaintiff for a pair of broken glasses—shortly after the accident in which plaintiff was injured—and at a time when plaintiff was unaware of the extent of his injuries. Plaintiff

---

in determining "whether the case is at issue for trial". However, in the following paragraph (page 10) this paragraph appears:

"The rules reflect a belief that the vaunted effectiveness of pleadings is narrowing the issues is a myth. This function [says the author] can be performed much better by discovery, summary judgment, and pre trial conferences."

Notwithstanding what is set forth in our Rules and discussed in the cited practice book I entertain some doubt as to just how satisfactory Rule 7(a) is. It would appear that when an affirmative defense must, by the Rules, be and is pleaded in an answer the filing of a properly responsive reply can serve a useful purpose to present the issues. By way of illustration and comparison between our present practice under Rule 7(a) and the former practice, attention is directed to the case of *Wright v. Wilmington City Ry. Co.*, 2 Marvel 141, 143, 144, 42 A. 440, 441 (Super Ct. 1895). This Court ruled in the cited case regarding a release to which the plaintiff had filed a reply of *non est factum* that the plaintiff could not get in evidence of fraud in its procurement. Said the Court—"* * * you [the plaintiff] must set forth that it was procured by fraud * * *. You [addressing counsel for plaintiff] are shut out from that evidence." The Court ultimately directed a verdict for defendant.

pleaded in the reply that there was a mutual mistake of fact at the time of execution of the release pleaded by the defendant.

Defendant could have propounded interrogatories to plaintiff concerning the execution of the release and for other information relating to why plaintiff regarded the release to be ineffective. It would have been proper for defendant to have called upon plaintiff under Rule 36, Rules of the Superior Court, to admit execution of the release. These several steps by way of interrogatories and for admission of facts would have developed plaintiff's position with respect to the release.

An alternative to moving for a reply or seeking discovery was for defendant to move, as he did, for summary judgment under Rule 56, Rules of the Superior Court, basing his motion on the release and check pleaded. Defendant filed his brief in support of his motion for summary judgment on December 5, 1961.

Plaintiff's answering brief was not filed until April 9, 1962. Attached to this brief was an affidavit made by plaintiff and showing it had been executed January 26, 1962. The affidavit is set forth in full—

"On or about the 15th day of October, 1960, I was walking North on Route 13, near Townsend, Delaware, and was struck by an automobile operated by the defendant, Walter J. Soroka. Immediately after the accident I was taken to the Delaware Hospital where I was a patient until December 22, 1960, being treated for a broken right leg and an injured left leg as a result of the above accident. After being released from the Delaware Hospital, I entered the State Welfare Home and remained there until about April 15, 1961. I am a male, age 30 years and went to the seventh grade in school.

"While I was in the hospital, E. B. Caron, an insurance

adjuster of Employers Liability Assurance Company came by and talked to me and left his card. In April, 1961, I went by Mr. Caron's office and I talked to a Mr. Francis X. Donohoe, an adjuster of Employers Liability Assurance Company. Mr. Donohoe stated that they did not have to give me anything because of statements they had received from people but they would be willing to give me seven hundred dollars ($700.00) to help me out. I left Mr. Donohoe's office. About two weeks later, on May 2, 1961, Mr. Donohoe came to my home and told me that he had talked to his company and that they had agreed to give me nine hundred dollars ($900.00) to help me out and to put the file away. Mr. Donohoe again stated to me that they did not have to give me anything but wanted to help out. I reminded Mr. Donohoe of three thousand five hundred dollars ($3,500.00) in hospital expenses which I had told him about when I was in his office and he stated that they did not have anything to do with it and if I signed the paper (the Release) I could still sue if I wanted to. I signed the paper (the Release) without reading it and he wrote me a check for nine hundred dollars ($900.00). I signed the paper because Mr. Donohoe told me that they did not have to give me anything and only wanted to put the file away and that I could sue even after signed the paper (the Release).

"[s]   Samuel H. Hicks
"Samuel H. Hicks"

This affidavit, I may observe, tended to serve the functions of a reply since it put the validity of the release in issue.

Defendant's reply brief was filed on June 4, 1962 and it too had an affidavit attached as an exhibit, made by one Francis X. Donohoe on June 4, 1962.

The essentials of the Donohoe affidavit appear below:

"1. That he is superintendent of The Employers' Lia-

bility Assurance Corporation, Ltd., Claim Department, in Wilmington, Delaware, said company being the insurer of Walter J. Soroka, the defendant in the above-entitled cause.

"2. That on or about April 14, 1961, the plaintiff, Samuel H. Hicks, visited his office at 447 Wilmington Trust Building, Wilmington, Delaware, to talk with him about an accident which occurred on October 15, 1960, in the southbound side of U. S. Route .#13, north of the Hotel Rodney, New Castle County, Delaware.

"3. Hicks said that as a result of the accident, he had a bill from the Delaware Hospital, Wilmington, Delaware, of more than $3,000, plus loss of wages. Hicks stated that he felt he should be paid all of his medical expenses plus his loss of wages. Mr. Donohoe told Mr. Hicks that from the investigation completed by his office, Mr. Donohoe felt that Mr. Hicks was at fault and was not entitled to recover from the defendant, Walter J. Soroka, and that he, Francis X. Donohoe, would consider settlement of Mr. Hicks' claim for a small amount, providing no court action was necessary. Mr. Donohoe told Mr. Hicks that he would pay $500 in full settlement of the claim. After further discussion, Mr. Donohoe indicated to Mr. Hicks that he would recommend payment for Mr. Hicks claim up to $700.00. Mr. Hicks left the office with the understanding that he would speak to his relatives about his discussion with Mr. Donohoe and contact Mr. Donohoe at a later date.

"4. On May 2, 1961, Mr. Donohoe met with Mr. Hicks outside the Hotel Rodney, New Castle, Delaware, to discuss the matter further. He informed Mr. Hicks that his Company was still interested in bringing the claim to an end. Mr. Hicks repeated that he was interested in his hospital bill, plus some money for himself. Mr. Donohoe flatly rejected this offer and told him, as he had previously, that Mr. Hicks had been at fault and that he could not pay the money Mr. Hicks wanted

from Mr. Soroka. Mr. Hicks then reduced his demand to $1,500 and again Mr. Donohoe told him that this was on the high side. In the presence of Mr. Hicks' sister, Mrs. Sarah Briscoe, Mr. Donohoe told them both that on behalf of Mr. Soroka, his company was willing to pay the amount of $900.00 in full settlement. Mr. Hicks questioned his sister, Sarah Briscoe, as to whether or not he should accept such an offer. She replied: 'If that is all you can get you had better take it." Mr. Donohoe then instructed Mr. Hicks and his sister, Sarah Briscoe, that a release on behalf of Mr. Soroka was necessary. Mr. Donohoe emphasized that the release was in full and final settlement and that Mr. Hicks would have no further recourse against Mr. Soroka if he accepted the check and signed the release.

"Prior to the issuing of the check in the amount of $900.00, Mr. Hicks signed the release and the same was witnessed by his sister on May 2, 1961. A check for $900.00 was then turned over to Mr. Hicks and he endorsed and cashed the check. Above his signature on the check appear the words 'Endorsement by the payee constitutes a complete release and settlement in full satisfaction of the claim or account shown on reverse hereof.' On the face of the check, a photostatic copy of which is attached to defendant Soroka's answer filed in this cause, appears the following: 'In full settlement of the following account—the insured Walter J. Sorka, claimant Samuel H. Hicks.'

"At no time did Francis X. Donohoe tell Mr. Hicks that if he signed the release he could still sue if he wanted to. It was fully understood by Mr. Hicks and his sister, Sarah Briscoe, that the $900.00 was the final payment for his accident."

I state for all purposes that in neither affidavit is any showing of fact made from which relationship of principal and agent as between defendant and Mr. Donohoe could be said to have been shown.

Defendant cites and relies very much on *Brown v. Eakin,* 11 Terry 574, 137 A. 2d 385 (Super. Ct. 1957). Judge Christie of this Court said, in granting a motion for summary judgment, in the cited case (11 Terry at p. 578, 137 A. 2d at p. 387):

"I am of the opinion that under Delaware law the release executed in this case bars the bringing of any action by the signer of that release against the person released as to any claims which may arise on account of the accident referred to in the release. * * *"

This is the general law, 76 *C. J. S.* Release § 40 and 45 *Am. Jur.*—Release—§ 26 and § 27. Here it is stated that the execution and delivery of an effective release terminates the rights of the party executing and delivering the release and an effective release is a bar to recovery on the claim released. These principles were recognized and applied by our Supreme Court in *Hob Tea Room, Inc. et al. v. Miller,* 33 Del. Ch. 38, 48, 89 A. 2d 851, 856 (1952), and recently applied by Judge Storey in *Nogan et al v. Berry,* 5 Storey 406.

Plaintiff argues earnestly that a genuine issue of a material fact was raised by his affidavit and therefore this Court should deny defendant's motion for summary judgment; he asserts that the release is invalid because it is tainted with fraud. I am not convinced that this is so.

The substance of plaintiff's contention is that fraud surrounded the execution and delivery of the release in that the plaintiff was told by the defendant's agents (the affidavit shows no facts of agency) that they owed him nothing but would give him $900.00 to "put the file away". Plaintiff argues his education was limited (he admits having gone through the 7th grade); and that he signed a release at defendant's request without reading it, relying on defendant's agents' statement that plaintiff could still sue if he wanted to. The affidavit shows that he discussed the extent of his

claim; it does not show that anything was done to interfere with his examining the release.

In his reply brief the defendant makes reference to the fact that prior to signing the release and accepting the check in payment plaintiff sought the advice of his sister and that this sister witnessed his signature to the release. She has filed no affidavit tending to deny such incidents. Moreover, defendant points to the fact that the plaintiff not only signed the release, but accepted and cashed the check for the sum called for by the release. On the back of the check, above plaintiff's signature appear the words "Endorsement by the payee constitutes a complete release and settlement in full satisfaction of the claim on account shown on the reverse hereof."

It is highly significant to me that while plaintiff claims he did not read the release, he makes no such claim as to the wording above his endorsement of the check. It was there before him to read as he endorsed the check and he concedes to have had a 7th grade education.

Of course, his failure to read the release—or even the legend on the reverse side of the check—before he signed either of them, would not excuse him, for one cannot avoid the effect of a contract of release by stating that he did not read it when he signed it or knew what it contained. See 76 *C. J. S.* Release § 25b, page 647 *et seq.* and 45 *Am. Jur.*—Release—§ 18. No circumstances are shown in the affidavits of the existence of any relationship of trust and confidence between plaintiff and Donohoe, and, as heretofore stated, of any interference with plaintiff in the reading of the release had he been of a mind to do so; his affidavit tends to show that he was aware he was signing a release and hence I cannot hold that defendant could validly rely on what he states Donohoe said to him about the contents or the effect of the release. Plaintiff was under a duty to inform himself

of its contents and the effect of his signing it. This is of particular importance in light of the fact that plaintiff endorsed and cashed the check given to him on execution of the release, which check had a warning legend at the point of plaintiff's endorsing the check. It is stated, 76 *C. J. S.* Release §25b, pages 647, 648:

"It is the duty of a releasor, having the ability and opportunity, to inform himself of the contents of the release before he executes it, and to exercise prudence in signing it. Hence, the general rule is that a releasor having such ability and opportunity, or in the absence of fraudulent prevention or denial of opportunity, and whether or not he is able to read, will not be allowed to avoid the effect of the release by showing that he was ignorant of its contents, or that he failed to read it, or to have it read to him, or that he relied on the statement of the releasee or his agent as to its contents, particularly where the release contains a statement that the releasor read it, the reason most commonly assigned being that the releasor is estopped by his negligence from denying knowledge of the contents of the release. * * *"

See *Dobler v. Story*, 268 F. 2d 274 (C. C. A. 9, 1959) applying California Law; *Chesapeake & O. Ry. Co. v. Chaffin*, 184 F. 2d 948, 952 (C. C. A. 4, 1950) applying West Virginia Law; *Lawrence v. Muter*, 171 F. 2d 380, 384 (C. C. A. 7, 1949) in which case there is discussion of the necessary showing that has to be made of the existence of a fiduciary relationship between a releasor and releasee sufficient to be the basis for avoiding the effect of a release for consideration; *Southern Stages, Inc. v. Fullington*, 66 Ga. App. 773, 19 S. E. 2d 324 (1942); *Harrison v. Southern Ry. Co.*, 229 N. C. 92, 47 S. E. 2d 698 (1948) and *Poe v. Illinois Cent. R. Co.*, 339 Mo. 1025, 99 S. W. 2d 82.

In *Harrison v. Southern Ry. Co., supra,* the North Carolina Supreme Court said (47 S. E. 2d at 700) of conversations between a releasor and the party procuring the release—

"It is established by the decisions on the subject that one who signs a written instrument, without being induced thereto through fraud or deception, cannot avoid its effect on the ground that at the time he signed the paper he did not read it or know its contents, but relied upon what another said about it. * * * It is the duty of one signing a written instrument to inform himself of its contents before executing it, if he have the ability and opportunity to do so, and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it. * * * He cannot invoke his own heedlessness to discredit his solemn release, and then call that heedlessness some one else's fraud. * * *

"It is true, the plaintiff says he 'didn't have the opportunity' to read the instrument. He had the opportunity to sign it, to see that it was a sealed instrument, and a like opportunity to read it, or have it read, so far as the record discloses. But what is equally important, the plaintiff got what he understood he was to get, and no more, at the time. In this, he was not deceived or misled. * * *"

Similarly in *Poe v. Illinois Cent. R. Co.*, *supra*, the Supreme Court of Missouri said (99 S. W. 2d at 89):

"While the law affords every one reasonable protection against fraud, it does not go to the romantic length of establishing the relation of parent and child or guardian and ward between courts and adults capable of managing their affairs, in full possession of their faculties and unrestrained in action, and indemnify them when dealing at arm's length against the consequences of their own indolence, listless inattention, or unwarranted credulity in the transaction of business affairs. Under the authority of the *Dryssen* [*v. Union Elec. Light & Power Co.*, 317 Mo. 221, 295 S. W. 116], *Higgins* [*v. American Car Co.*, 324 Mo. 189, 22 S. W. 2d 1043], *Bren-*

*necke* [*v. Ganahl Lumber Co.*, 329 Mo. 341, 44 S. W. 2d 627], *Hannah* [*v. Butts*, 330 Mo. 876, 51 S. W. 2d 4], and *Alford* [*v. Wabash R. Co.*, 229 Mo. App. 102, 73 S. W. 2d 277] Cases (to the effect, as between parties dealing at arm's length, a representation that a release is merely a receipt is not, standing alone, actionable fraud) and the *Conklin Case* [*v. Missouri Pac. R. Co.*, 331 Mo. 734, 55 S. W. 2d 306] to the effect that the courts will not protect those, who with full opportunity to do so, will not protect themselves), *supra*, defendant's demurrer should have been sustained. The most casual glance at the printed portion of the release or release-draft by one able to read would have disclosed the contract was one of release and settlement; and the case appears to be within the observation in *Judd v. Walker*, 215 Mo. 312, 337, 114 S. W. 979, 980: 'If one voluntarily shuts his eyes when to open them is to see, such a one is guilty of an act of folly (in dealing at arm's length with another) to his own injury; and the affairs of men could not go on if courts were being called upon to rip up transactions of that sort.' "

The parole evidence rule could also be an important factor under the circumstances appearing from both affidavits. See *Dobler v. Story, supra,* see 268 F. 2d at page 278 and *Outten v. Knowles,* 4 Har. 533 (1874).

No mistake in fact is shown to exist and hence *McGuirk v. Ross, supra,* would not be applicable. See also *Nogan et al. v. Berry, supra,* decided by Judge Storey on January 15, 1963.

The circumstances shown in the plaintiff's affidavit do not amount to fraud, nor is there a showing of misrepresentation such as would invalidate the release. If this was a court of equity the facts which plaintiff has shown would not be sufficient to relieve him,—if he were to contend—as his argument suggests—that there was a mistake of law. *Ross v. Singleton,* 1 Del. Ch. 149 (Ct. Ch. 1821). Courts do not re-

lieve against mistakes of law, and I can comprehend plaintiff's statement that he was told "could sue" as being no more than a mistake of law. As a practical matter assuming that Donohoe did say to plaintiff that he "could sue" such statement does not give any import that plaintiff could recover.

I can find no genuine issue of a material fact and for the reasons set forth, defendant's motion for summary judgment is granted. An order to such effect may be presented.