Edith N. WRIGHT and Charles F. Wright, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 76–289.

United States District Court, D. Delaware.

Feb. 15, 1977.

Paul H. Spiller, Kimmel & Spiller, P. A., Wilmington, Del., for plaintiffs.

John H. McDonald, Asst. U. S. Atty., Wilmington, Del., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LATCHUM, Chief Judge.

This is an action under the Federal Tort Claims Act for a monetary judgment against the United States for personal injuries and property damage sustained by Edith Wright[1] as a result of an automobile accident involving a federal employee. The defendant answered the complaint and thereafter moved for summary judgment; the motion was supported by an affidavit and certain documents attached as exhibits which purported to show that the Wrights had filed an administrative claim relating to both property and personal injury damages resulting from the accident, and that such claim was accepted and paid in full by the defendant on the express condition that payment was a final settlement which operates to bar any further recovery against the United States.

Shortly before a hearing scheduled on defendant's motion for summary judgment, the Wrights' attorney filed a counter-affidavit which contested a number of theretofore undisputed facts. An evidentiary hearing was held on February 1, 1977, to aid the Court in resolving the factual disputes. After carefully considering the weight and sufficiency of the evidence and the credibility of the witnesses who testified about events which occurred nearly three years ago, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On February 12, 1974, an automobile accident occurred near Hillcrest and Beeson Streets, Wilmington, Delaware involving the Wrights' vehicle and a vehicle operated by an employee of the United States Postal Service who was acting within the scope of his employment. The accident resulted in damages to the Wrights' vehicle and a shoulder injury was suffered by Edith Wright.

2. On February 14, 1974, the Wrights filed a standard Form 95 (Claim for Damage or Injury) with the United States Postal Service in Wilmington claiming property damage in the amount of $565.32 (with two estimates attached) and asserting a claim of undetermined amount for personal injuries.[2]

3. On February 26, 1974, Thomas Anderson, a postal inspector assigned to investigate the Wrights' claim, advised the

---

1. Charles Wright is also a party to this suit claiming damages for loss of consortium.

2. Submission of a claim in an undetermined amount makes the claim a nullity. *Gunstream v. United States*, 307 F.Supp. 366 (C.D.Cal. 1969).

Wrights by letter that the submitted Form 95 was deficient because it failed to specify an amount for personal injuries, the total property and personal injury damages claimed, and was not signed by both claimants. Anderson also advised the Wrights that a new form correcting these deficiencies would be necessary before the claim could be considered and that the Wrights should furnish documents to support the personal injury claim.[3]

4. The Wrights later submitted an amended claim seeking $565.32 in property damages and $436.00 in personal injury damages.[4] The $436.00 represented (1) the amount of incurred medical expenses, (2) lost wages, and (3) $250 to cover future medicals and pain and suffering.[5]

5. The total claim for property and personal injury damages came to $1,001.32. On May 18, 1974, Anderson notified the Wrights that this amount exceeded the $1,000 ceiling on summary claim adjudications and that Anderson would be required to file a narrative report detailing the circumstances of the accident and including his recommendation as to whether the claim should be settled before the claim could be finally processed. Anxious to have their claim paid the Wrights consented to revise their estimate for personal injuries to $434.00 thereby bringing the total claim under the $1,000 ceiling.[6]

6. On June 26, 1974, Anderson recommended that the amended claim be accepted and authorized issuance of a check for $999.32. In accordance with Postal Service procedures, Anderson also prepared a cover letter to accompany the check advising the Wrights that their claim had been approved and that the enclosed check represented full payment.[7] The letter also advised: "Acceptance of the above amount operates as a complete release of any claim against the United States and against the employee of the Government whose act or omission gave rise to the claim by reason of the same subject matter." The letter and the check were received in the mail and the check cashed on July 3, 1974.[8]

## CONCLUSIONS OF LAW

1. Jurisdiction arises under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and §§ 2671 et seq.

■ 2. At issue in this case is whether payment of the Wrights' administrative claim by the defendant, and the acceptance of such payment with notice that it was in full settlement of the amended claim, bars this action to recover an additional amount for alleged pain and suffering, loss of consortium and property damage.[9]

3. The defendant contends that the Wrights' claim is barred by the language of 28 U.S.C. § 2672 which provides, *inter alia*, that the acceptance of a settlement award "shall constitute a complete release of any claim against the United States" and that the Wrights' negotiation of the check after Anderson's letter advised them that payment was in full satisfaction of any claim against the defendant operated to ratify the release.

---

3. GX 2.

4. GX 3.

5. The Wrights' attorney argued at the hearing that the $250 was intended to cover only future medical bills and not to preclude a later claim for pain and suffering; Anderson testified under oath, however, that Edith Wright suggested the $250 to cover anticipated doctor bills and future pain and suffering occasioned by the accident. Although the accuracy of the witnesses' memories with respect to conversations had nearly three years ago is dubious at best, the Court finds Anderson's testimony, as refreshed by his notes, to be more creditable under the circumstances.

6. *See* Docket Item 11. Above the Wrights' signatures on the claim form appear the words "I certify that the amount of claim covers only damages and injuries caused by the accident above and agree to accept said amount in full satisfaction and final settlement of this claim."

7. Docket Item 11, Ex. A.

8. *See* Docket Items 9 and 11, Ex. B.

9. Resolution of the issue is governed by federal law. *E. g., Macy v. United States*, Civil Action No. 75–1516 (W.D.Pa. Aug. 27, 1976) slip op. at 6–10.

On the other hand, the Wrights argue that they never intended to relinquish their claim for pain and suffering when they signed the claim form and cashed the check. Indeed, it was suggested in an affidavit and at the hearing that Anderson pressured the Wrights to accept the settlement award and, moreover, that he deceived the Wrights into thinking that the release would not preclude a later suit for pain and suffering. Thus, in an obvious effort to save the action from being barred by the release, the Wrights have endeavored to invalidate the release by proving fraud and deceit on the part of Anderson during the course of settlement negotiations. *Cf.* 28 U.S.C. § 2672; *Huber v. United States*, 244 F.Supp. 537 (N.D.Cal.1965).

■ 4. After carefully considering the weight and sufficiency of the evidence adduced at the hearing and the relevant federal law on the issue, the Court concludes that this action is foreclosed by the defendant's prior payment of the Wrights' administrative claim. *Macy v. United States, supra*; *Wexler v. Newman*, 311 F.Supp. 906 (E.D.Pa.1970); *Huber v. United States, supra.*

■ 5. The evidence in this case at most proves the possibility that a layman misunderstood the legal ramifications of accepting a settlement award even though the ramifications were clearly delineated in the standard claim form and in Anderson's letter, or, perhaps, that the Wrights understood the legal consequences but nevertheless did not "intend" to surrender the claims for pain and suffering and loss of consortium. In any event, the evidence falls considerably short of proving fraud, bad faith, or a willful effort to mislead or deceive on the part of Anderson and proof that the Wrights perhaps misunderstood the legal implications of accepting the settlement award or proof of a lack of intent to relinquish the claims now being advanced is not enough to vitiate the release.[10] *See Huber v. United States*, 244 F.Supp. at 538; *Jordan v. United States*, 333 F.Supp. 987 (E.D. Pa.1971), *aff'd*, 474 F.2d 1340 (C.A.3, 1973) (action under Federal Tort Claims Act in which Government mislead claimant by stating time barred claim would be considered if claim for sum certain presented; held, action barred by two year statute of limitations).

■ 6. Therefore, based upon the finding that the Wrights accepted defendant's payment of their claim with notice of its finality, the Court concludes that the Wrights' cause of action has been compromised and released and that the defendant is entitled to a judgment on its motion as a matter of law.[11]

---

**10.** The Wrights' attorney contends that *Robinson v. United States*, 408 F.Supp. 132 (N.D.Ill. 1976) commands a different result. *Robinson* held that state law governs the validity of a release in an action under the Federal Tort Claims Act. However, applying state law in the case sub judice would not change the result because the law of Delaware provides that, absent a showing of fraud or deception, a release cannot be avoided merely on the ground that the releasor made a "mistake of law" with respect to the legal significance of signing a release or that the releasor failed to read the release or to comprehend its contents. *Hicks v. Soroka*, 188 A.2d 133, 138–41 (Del.Super. 1963); see 66 Am.Jur.2d, Release §§ 15–24.

**11.** If the Court accepts as true the Wrights' contention that the amended claim did not include the present action for pain and suffering and loss of consortium, an alternative reason exists for granting the defendant's motion. Although the complaint alleges that "notice" of the claims was properly given, a civil action for damages cannot be maintained unless "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). However, the record fails to establish that the Postal Service was given the opportunity to consider, and finally deny, the claims for pain and suffering and loss of consortium now being advanced by the Wrights. Thus, since compliance with the administrative procedure is a jurisdictional prerequisite to filing suit under the Federal Tort Claims Act, *Robinson v. United States Navy*, 342 F.Supp. 381 (E.D.Pa.1972), the Court is without jurisdiction to consider the pain and suffering and loss of consortium claims. *Best Bearings Co. v. United States*, 463 F.2d 1177 (C.A.7, 1972). Furthermore, an action against the defendant based on these claims would be forever barred because more than two years have passed since the claims accrued. *See* 28 U.S.C. § 2401(b); *Wolak v. United States*, 366 F.Supp. 1106 (D.Conn.1973).