JAMES DYRSSEN, Appellant, v. UNION ELECTRIC LIGHT & POWER COMPANY. — 295 S. W. 116.

Division One, May 24, 1927.

**1. DEMURRER TO EVIDENCE: Right to Jury Trial.** The giving and reading to the jury of defendant's instruction in the nature of a demurrer to the evidence at the close of plaintiff's case is nothing more than telling

the jury what is the legal effect of the undisputed testimony before them, and does not deprive the plaintiff of his right to a trial by jury.

2. **RELEASE: Personal Injuries: Misreading: Fraud.** If the employee of a corporation, having received personal injuries in the course of his employment, is induced by the company's foreman to rely upon the foreman's reading of a contract releasing his cause of action, before signing it, and the foreman misreads it, with the purpose of deceiving him, and thus obtains his signature to a document different from that intended, the misreading and deception, under such circumstances, is a fraud, and the release contract will be set aside. But where the employee was a young man of good education and business experience, fully able to read and understand the meaning of the contract; at the time he signed it he was laboring under no physical or mental handicap which would have interfered with his reading it; there was no confidential relation between him and the foreman; his own testimony shows that the foreman did not induce him to rely on his reading of it, but that he signed it supposing that it was a receipt for a sick benefit due him from a benevolent association, of which the foreman was neither secretary nor treasurer; and he had full opportunity to read it, and a casual reading would have revealed to him that it was a release and full settlement for his injuries, he cannot take advantage of his own failure or neglect to read it, or be heard to say that it did not express the real contract; and such being the undisputed facts the court does not err in sustaining a demurrer to the evidence in the trial of his action for his personal injuries.

Corpus Juris-Cyc. References: Contracts, 13 C. J., Section 250, p. 372, n. 34. Juries, 35 C. J., Section 171, p. 242, n. 77. Release, 34 Cyc., p. 1056, n. 86; p. 1105, n. 26. Trial, 38 Cyc., p. 1564, n. 71.

Appeal from Circuit Court of St. Louis County.—*Hon. G. A. Wurdeman*, Judge.

AFFIRMED.

*John C. Doyle* and *George F. Heege* for appellant.

Defendant's instruction in the nature of a demurrer given by the court at the close of plaintiff's evidence was error and should not have been given. Sec. 1238, R. S. 1919; O'Dell v. National Lead Co., 243 S. W. 397; Rau v. Robertson, 260 S. W. 755; Green v. Railroad Co., 251 S. W. 931; Carrol v. Peak, 156 Mo. 451; Tait v. Locke, 130 Mo. 282.

*A. E. L. Gardner* for respondent.

(1) The instruction given by the court at the close of plaintiff's evidence, directing a verdict for defendant, was authorized by the evidence. Plaintiff was *sui juris*, in possession of his faculties, able to and had full opportunity to read the instrument which he signed. Under this situation the law presumes that he knew its contents, and

he will not be permitted to take advantage of his own failure or negligence and be heard to say that the instrument did not express the real contract. Mateer v. Ry. Co., 105 Mo. 320, 351; Crim v. Crim, 162 Mo. 552; Reddick v. Light & Power Co., 210 Mo. App. 260; O'Shea v. Lehr, 182 Mo. App. 690; Ely v. Sutton, 177 Mo. App. 553; Paris Mfg. & Imptg. Co. v. Carle, 116 Mo. App. 581; Anderson v. Drug Co., 149 Mo. App. 554; Hughey v. Truitt, 196 S. W. 1065; Hall v. Ry. Co., 209 S. W. 582. (2) A compromise of a doubtful claim is a good consideration for a contract. Wood v. Telephone Co., 223 Mo. 565; Livingston v. Dugan, 20 Mo. 102; Hill v. Coal Co., 124 Mo. 153.

ATWOOD, J.—This is an action to recover damages for a wrist injury sustained by plaintiff while cranking a Ford automobile furnished him by defendant in connection with his duties as meter inspector. The trial judge sustained a demurrer to plaintiff's evidence, whereupon the jury returned a verdict for defendant, and from the judgment rendered thereon plaintiff has appealed.

Plaintiff alleged that defendant was negligent in failing to furnish plaintiff with reasonably safe tools, and appliances with which to work in that "the spark control and the commutator on said Ford automobile was defective and that the said spark control caused the commutator on said automobile to stay advanced too far, thus causing the engine of said automobile to run backwards instead of forward and thus caused said iron crank to fly backwards with great force and violence and suddenly strike plaintiff on the right wrist."

Defendant's answer consisted of a general denial, and pleas of assumption of risk, contributory negligence, and the execution and delivery of a full release.

In reply plaintiff denied each and every allegation contained in defendant's answer, and by way of further reply stated that "the alleged release as set up in defendant's answer is null and void and has no force and effect for the following reasons, to-wit: That plaintiff at the time he signed said instrument, did not know it was a release for his cause of action, but thought it was a receipt for certain sick benefits to which plaintiff was entitled. Plaintiff states that he, as an employee of the defendant, upon becoming injured or sick or losing time, was entitled by virtue of his employment with said company through a mutual organization which is maintained, to certain sick benefits and at the time plaintiff signed said alleged release it was read to him by defendant's agents as merely being a receipt for his said sick benefit, and plaintiff did not know of said release until the defendant filed its answer in this cause. That by virtue of the misreading of said release to plaintiff by defendant's agents, and

by virtue of false and fraudulent statements to the effect that said instrument was not a release but merely a receipt for certain sick benefits, plaintiff was induced to sign said alleged release and at the time of the signing of the same there was no meeting of the minds between plaintiff and defendant, and plaintiff never at any time intended to sign a release for his cause of action herein, but merely intended to sign a receipt for said sick benefit which accrued to plaintiff as aforesaid.''

The release pleaded in defendant's answer is as follows:

"RELEASE.

"July 14, 1921, Webster Groves, Mo.

"In consideration of being paid by the Union Electric Light & Power Co., at the rate of full time (which amount is equal to or in excess of the payments required under the Workmen's Compensation Act of Missouri) from June 6, 1921, until such time as I am able in the opinion of the company's surgeon, to return to work, in addition to the sum of one dollar paid to me by said company, receipt of which is hereby acknowledged, and also for the further consideration of free medical attendance furnished me by said company, I hereby RELEASE AND FOREVER DISCHARGE said UNION ELECTRIC LIGHT AND POWER CO., its successors and assigns from any and all claims and causes of action whatsoever in law or equity which I ever had or may have under the Common Law, Statutory Liability or Workmens' Compensation Act on account of injuries or any consequence thereof sustained by me as a result of an accident suffered by me at Webster Groves, Mo. on June 6, 1921.

"Name JAMES G. DYRSSEN,

"Address 7211 Picadilly Ave.,

"Maplewood.

"RELEASE.

"The foregoing release was read to James Dyrssen and signed by him in our presence and said James Dyrssen stated that he fully understood that by signing this document he released UNION ELECTRIC LIGHT AND POWER CO. from all claims for his injuries as therein stated.

"OSCAR HUFFMAN,

"JULE SCHILLING,

"Witnesses."

Appellant's only assignment of error is that "the court erred in reading to the jury and in giving defendant's instruction in the nature of a demurrer to the evidence at the close of plaintiff's case." Such action was nothing more than telling the jury what was the legal effect of the plain undisputed evidence before it. Such has been held not to deprive the party against whom the verdict was di-

rected of his right to a jury trial. [38 Cyc. 1534; Mallen v. Longworthy, 70 Ill. App. 376; 26 R. C. L. 1060; Hopkins v. Nashville, R. Co., 96 Tenn. 409, 32 L. R. A. 354.]

Section 1238, Revised Statutes 1919, provides that issues such as were made by the answer and reply relating to the alleged release "shall be submitted with all the other issues in the case to the jury, and a general verdict or finding upon all the issues, including the issue or issues of fraud so raised, shall be sufficient." It follows that if the issue of fraud thus raised is not supported by evidence sufficient to go to the jury, defendant's demurrer was properly given.

Respondent says that "plaintiff was *sui juris*, in possession of his faculties, able to and had full opportunity to read the instrument which he signed," and that "under this situation the law presumes that he knew its contents, and he will not be permitted to take advantage of his own failure or negligence and be heard to say that the instrument did not express the real contract." This is expressive of a well recognized general rule observed in Crim v. Crim, 162 Mo. 544, l. c. 552; Mateer v. Ry. Co., 105 Mo. 320, l. c. 351, 354, and other cases cited by respondent.

In his reply plaintiff stated that he was induced to sign the alleged release "by virtue of the misreading said release to plaintiff by defendant's agents." He now contends that under the proof adduced in support of this allegation he is not amenable to the general rule above indicated, and for justification leans heavily upon the following expression by Judge GOODE in Tait v. Locke, 130 Mo. App. 273, l. c. 282: "We know of no case in which it was ruled that the actual misreading of a paper purporting to contain a contract, thereby inducing the signing of it, was not a fraud which the signer might set up in defense, even though he could have read the paper himself. Such a betrayal of confidence is revolting and so infrequent that it is not likely to be anticipated."

The above expression must be read and understood as qualified by Judge GOODE's preceding words that "the defense of fraud cannot be rejected, unless the inference is irresistible that defendant failed to observe ordinary care to learn the contents of the paper in controversy before signing it." Its proper interpretation is thus well stated by Judge NORTONI in O'Shea v. Lehr, 182 Mo. App. 676, l. c. 690 (italics ours):

"Where one is *induced by another to rely* upon his reading the contract to him before signing, and such person misreads it, with a view to deceive, and thus obtains his signature to a document different from that intended, relief may be had on such showing alone. But this proceeds from the fact that such a betrayal of confidence is

both so revolting and so infrequent that it is not likely to be anticipated by the average man.''

Plaintiff's evidence tended to show that his foreman was Oscar Hoffman, to whom he reported the defective condition of the car on the Saturday before the Monday when he was injured. This foreman reported the car in good condition to plaintiff Monday morning, and after plaintiff was injured he took him to his home. Thereafter plaintiff discussed with Hoffman the payment of certain disability benefits he was to receive from an association to which he belonged. As to the actual signing of the release plaintiff testified in part as follows (italics ours):

''Q. Now tell the circumstances under which this was signed, tell your understanding of that? A. Do you want me to tell what led up to it, I just signed it.

''Q. Just what led up to it? A. I was complaining that I did not receive any sick benefit money.

''Q. You were complaining to whom? A. To Mr. Hoffman, he said he would get my paper signed first which would entitle me to that paper.

''Q. Who told you that? A. Mr. Hoffman told me that several days later. He produced the paper and read it to me.

''Q. Did he read it to you? A. *I don't remember how the wording of it was,* I was standing as far as from here to that post away from him in the other side of that—of his desk.

''Q. What were you talking about? A. We were talking about the sick benefit; he said as soon as he could get that paper shot through the main office in St. Louis, my money would come out.

''Q. Did he say that then and there at the time you signed it? A. Yes, sir; then at the time I signed it.

''Q. How did it read to you, what was your understanding of it? A. My understanding was—

''Mr. Gardner: I object to that, that is not his understanding at all what happened there.

''The Court: What his understanding was is incompetent.

''Mr. Heege: Q. Do you remember how he read that? A. *No, sir, I cannot recall just how he read that.*

''Q. Now I will show you here Defendant's Exhibit 3 and ask you to look at that?

''Mr. Gardner: That is Defendant's Exhibit 1.

''Mr. Heege: Q. Yes, sir, I will show you Defendant's Exhibit 1 and ask you if that is what he read to you on that date? A. I don't remember ever hearing or seeing that. I don't remember seeing that.

''Q. I did not ask you that question; *is that what he read to you?* A. *No, sir, that is not what he read to me.*

"Q.   *That is not what he read to you?*   A.   *No sir.*

"Q.   *Can you remember some of the words that he used?*   A.   *No,*
*sir.*

"Q.   *When he read the document to you?*   A.   *No, sir.   'I James*
*Dyrsson hereby receipt,' it started out in that way, just like an ordi-*
*nary receipt it started out.   I could not recall the exact number of,*
*words or the wording of it.*

"Q.   Did he mention to you—?   A.   *It was a receipt.   I did not*
*pay that much attention to it.*

"Q.   A receipt of what?   A.   For a sick benefit."

The evidence further shows that plaintiff was a young man of
good education and business experience, fully able to read and un-
derstand the meaning of the alleged release and at the time he signed
the same he was laboring under no physical or mental handicaps
that would have interfered with his doing so; that he knew the fore-
man who read it to him was neither the secretary nor the treasurer
of the sick benefits association, and that no confidential relation
existed between him and this foreman. We find nothing in the record
from which it may be reasonably inferred that plaintiff's foreman *in-*
*duced him to rely on his reading of the release.* We think the case falls
not within the exception stated in the cases cited by appellant, but
within the doctrine now generally followed in this and other jurisdic-
tions, and thus stated in 2 Kent's Comm. 485:

"The common law affords to everyone reasonable protection
against fraud in dealing; but it does not go to the romantic length of
giving indemnity against the consequences of indolence and folly or
a careless indifference to the ordinary and accessible means of infor-
mation."

Numerous authorities in this State sustain the view that something
more is required to render the question one of fact for the jury than
the mere signing of a paper without reading it by one who is amply
able to read and understand, even though he relies on the other's
statement concerning the contents or character of the instrument
signed.   [Johnson v. Ins. Co., 93 Mo. App. 580, 590, 591; Magee v.
Verity, 97 Mo. App. 486, 71 S. W. 472; Crim v. Crim, 162 Mo. 544,
552, 553, 554, 63 S. W. 489; Ely v. Sutton, 177 Mo. App. 546, 162 S.
W. 755.]

According to the rule applicable to the facts here in evidence the
trial court did not err in directing a verdict for defendant, and the
judgment is affirmed.   All concur.