EDWARD W. HIGGINS, Appellant, v. AMERICAN CAR COMPANY.—22 S. W. (2d) 1043.

Division Two, December 11, 1929.

*Geo. O. Durham* and *Lowell Sparling* for appellant.

*Jourdan & English* and *Harry E. Wiehe* for respondent.

WHITE, J.—The plaintiff brought suit in the Circuit Court of the City of St. Louis for damages on account of personal injuries. On a trial of the case, February 26, 1926, at the close of the evidence the court directed a nonsuit with leave. After the overruling of the plaintiff's motion to set aside the nonsuit, he, in due course, appealed.

The plaintiff was employed by the defendant as a blacksmith. He worked in connection with some machinery, including a heavy hammer, used in removing and placing certain dies. The exact nature of the work which plaintiff was doing is not described, but the allegations of the petition and the evidence sufficiently show that slots or channels were cut in certain appliances to correspond with slots in the dies, and in such a slot a piece of steel, called a wedge or key, fitted so as to retain the die in place. On September 20, 1923, it is alleged, the plaintiff with an assistant removed a die and another proper die was placed in position. The plaintiff and his assistant then, for the purpose of securing the die, proceeded to drive in the key with a sledge hammer. The key was of hard, brittle, tempered steel, and in striking it with the hammer, a chip was broken off and it struck the plaintiff in the arm, causing injuries for which he sued. It is alleged that the defendant was negligent in furnishing a key of brittle, tempered metal, and in failing to warn him that the head of the key was brittle and dangerous, and that the defendant negligently failed to inspect the key prior to the injury.

In answer, the defendant denied every allegation of the petition; and further alleged that on October 15, 1923, plaintiff, for a consideration of $140 paid to him, released and discharged the defendant from all claims arising on account of the injury he claimed to have sustained. The reply of plaintiff denied the allegations of the answer, denied execution of the release set out in the answer, and alleged that, if the plaintiff did sign such a release, it was procured through fraud on the plaintiff, who thought he was signing a receipt for his wages.

It is unnecessary to consider whether the defendant originally was liable on account of any negligence claimed. The evidence sufficiently shows a release of liability for an adequate consideration. The defendant introduced Exhibit 2, which declares that the plaintiff, in consideration of $140 paid, does release and discharge the defendant from any and all claims and demands by reason of any damage, loss or injury which plaintiff had sustained in con-

sequence of the accident occurring on or about September 20, 1923. Also a check dated October 15, 1923, signed by H. O. Carriere, adjuster for the claim division of the Maryland Casualty Company, directing the Maryland Casualty Company to pay to E. W. Higgins $140 "in full settlement of and satisfaction of my claim for personal injuries sustained by me in an accident occurring on or about September 20, 1923, while in the employ of the American Car Company." The check concludes with this: "The endorsement hereof by the payee shall be a full release and acquittance for the item or claim described." On the reverse side appears the endorsement as follows: "The endorsement hereof by the payee constitutes a receipt and release for the items mentioned in this draft. (Signed) E. W. Higgins. Signature Martin Van Raalte." We infer that Van Raalte signed as a witness. It is peculiar that the body of the check acknowledges satisfaction of "my claim" in the first person, when it is signed by the maker while the payee is the one that has the claim. However, no point is made on that irregularity.

The plaintiff testified that about the fifteenth of October, he went to Van Raalte's office. He was told by Van Raalte to go down to the insurance office and "they will settle your wages with you." He said he went there to settle his wages. He took his wife with him. The wife testified that her husband told her he wanted her to go down town with him, that he had some trading to do. She could read without glasses. The plaintiff testified that he could not see to read or sign his name without glasses, but he did sign the receipt and endorse the check. He said that Mr. Weihe was in the Maryland Casualty office when he went there, for the purpose of getting his wages; that Weihe asked him how long he had been laid off, and he figured it would come to about $130, and finally told him he would make it $140, which was about what his wages would amount to by the following Monday. Weihe said, "Here is my check for signing this paper," and plaintiff asked him what it was and he replied, "It ain't nothing; only just a receipt; merely a receipt to show I paid your wages from the time you were injured."

The plaintiff did not read the paper, he said, because he did not have his glasses. His wife was present and could read. Mr. Weihe went outside to fix up the papers, leaving plaintiff and his wife in the office. The check which was handed him he kept for three or four days, then with his wife took it to the bank. He did not go in the bank with her. She went in and cashed it and deposited the money.

Nothing was said to prevent the plaintiff from reading the receipt or the check, or to prevent his wife, who was present, from reading either or both of the papers.

The rule is that the one who signs a paper without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents. [Dyrssen v. Union Elec. Light & Power Co., 317 Mo. 221, 1. c. 227; Hall v. Kansas City Southern Ry. Co., 209 S. W. 582, 1. c. 584; Allgood v. Tarkio Elec. & Water Co., 6 S. W. (2d) 51, 1. c. 54; Woosley v. Wells, 281 S. W. 695, and cases cited.] This court in the Wells case, 281 S. W. 1. c. 701, quotes from the Federal court as follows:

"A written contract of release cannot be annulled or avoided by proof that one of the parties to it, who was sound in mind and able in body, could not read or write, did not know the terms of the agreement, and neglected to ask any one to read it to him when he signed it. A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. . . . If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party. If he cannot read it, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so."

That quotation occurs also in the Allgood case, supra. Many other quotations of like import can be found in the cases cited.

The plaintiff testified that he went to the Casualty Company's office for the purpose of collecting his wages. He knew the Casualty Company did not pay him his wages. It was not his employer. Its only relation to the case was its liability as an insurer. He was not accustomed to signing a receipt when he got his monthly or bi-weekly wages from his employer. If it had been his custom, he would have said so. Ordinary prudence required him to ask the purpose of the receipt in such a case. When he received his usual check for his wages, there is nothing to show there was any stipulation on the back of the check which he was to endorse. When he was paid his wages, there was no elaborate business transaction such as took place on this occasion. This was not the place where he received his wages, nor was the money from anyone who owed him his wages. Everything about it tended to put him on his guard as to what he was signing. His wife was present and could read. On the trial he refused to sign his name at the request of the defendant's attorney on the ground that he could not sign his name without his glasses, and yet he swore that he signed the receipt without his glasses. He retained the check for

194

three or four days during which both he and his wife had ample opportunity to observe it and could reasonably see that it stated on its face that it was a release of his claim. He could see the statement on the back constituted a release of the claim. If he could not sign his name without the use of his glasses, he must have had on his glasses when he endorsed the check with the release plainly over his signature. He was guilty of such negligence throughout those transactions that he cannot be heard now to say that he was deceived and induced by fraud to execute the release and endorse the check.

The judgment is affirmed. *Blair, P. J.,* concurs; *Walker, J.,* absent.