Carl A. SANGER and Genevieve J. Sanger, Respondents,

v.

YELLOW CAB COMPANY, INC., a Corporation, Appellant.

No. 57785.

Supreme Court of Missouri, En Banc.

Nov. 13, 1972.

Stanley I. Dale, Whitney W. Potter, St. Joseph, for respondents.

Price Shoemaker and Robert D. Colley, St. Joseph, David Collins, Hadley E. Grimm, Collins & Grimm, Macon, for appellant.

SEILER, Judge.

This is an action for personal injuries suffered by Carl Sanger in an automobile collision. A verdict and judgment for $4,500 were entered for plaintiff, and defendant appeals. The Missouri Court of Appeals, Kansas City District, affirmed the decision of the trial court, and on motion of defendant, we ordered the case transferred here, Sec. 10, Art. V, Constitution of Missouri, V.A.M.S.

The issue in this case is whether plaintiff's claim is barred by the general release he executed, or is the release null and void by reason of mutual mistake as to plaintiff's injuries. It is important to note plaintiff makes no claim of fraud, overreaching, or misrepresentation and sought no equitable relief by way of rescission or reformation. We hold plaintiff is barred by the release and reverse the judgment.

On September 18, 1969 in St. Joseph, Missouri, plaintiff was seated in his parked car when it was struck by defendant's taxicab. Plaintiff said at the scene he was nervous but did not think he was injured. Plaintiff was anxious to get his car fixed because he was going on vacation in two weeks, and the following day he obtained a repair estimate. After someone called him from the office of defendant's lawyer, plaintiff went to the office on Saturday morning, September 20, 1969, and reached an agreement concerning the cost of repairs ($421.39) and the amount his wife would have to expend for cab fare until the car was fixed ($15.00). Plaintiff testified there was no discussion regarding any personal injuries except that he described his "funny feelings". Defendant gave plaintiff a draft for $436.39, and plaintiff signed a general release. Plaintiff denied knowing that the paper he signed was a release, saying that he thought it was a receipt. Plaintiff had been in an earlier accident where a settlement was made and

knew he signed a release on that occasion. Plaintiff admitted he could read and write.

Defendant's counsel testified, ". . . I asked if he was injured. He said he had some stiffness in his left shoulder and in his back, shook up. I asked if he had been to a doctor and he said no. I asked if he was going to a doctor, and he said no, 'not unless it gets worse.' I asked him if he wanted to go ahead and settle this claim, and he indicated he did because he had a vacation coming up and wanted his car fixed . . . I did inform him once payment was made the matter would be closed, he couldn't later get any more money . . ." Plaintiff remarked when he accepted the draft from the lawyer, "I am real stiff and sore but I guess I will live." After the accident, plaintiff's wife asked him daily if he was injured and he kept complaining of being "shook up and stiff". She further testified that on Saturday morning, before he went to the attorney's office, he complained of still being shook up and stiff, and that she tried to get him to go to the doctor but he replied, "No, I will probably be all right."

Plaintiff testified his pain became progressively worse from Sunday afternoon until Saturday, September 27, 1969, when he went to see a doctor. The doctor's ultimate diagnosis was an accident aggravated pre-existing hypertrophic osteoarthritic condition. At the time of the trial the doctor did not know whether plaintiff would suffer any permanent injury from the accident.

A few weeks after realizing he was hurt worse than he thought, plaintiff returned to defendant's lawyer, where he was given some medical report forms to have filled out. Later plaintiff received a letter from defendant stating that they were of the opinion that he had signed a valid release and consequently would not make any additional payment. Defendant's attorney testified that at the time the release was signed he took plaintiff at his word, that he was stiff and sore and it would work out, that

as far as what plaintiff told him the injury was inconsequential, that ordinarily the company did not pay for loss of use, "But when he indicated to me he was injured I didn't want to argue with him about fifteen dollars, and I added it on", that normally if a man is injured he also has the man's wife sign any release to release her loss of services claim, but did not in this case.

The portion of the release material to the issue under consideration reads as follows:

"RELEASE IN FULL

FOR THE SOLE AND ONLY CONSIDERATION OF FOUR HUNDRED THIRTY SIX

and 39/100 Dollars ($436.39) to me/us paid, receipt of which is hereby acknowledged, I/we hereby release and discharge YELLOW CAB COMPANY OF ST. JOSEPH, MO. INC. and BILLY W. HILL his or their heirs, successors and assigns, and all other persons, firms or corporations who are or might be liable, from all claims of any kind or character which I/we have or may have against him or them, and especially because of all damages, losses or injury to persons or property, or both, whether known or unknown, developed, or undeveloped, resulting or to result from accident on or about September 18, 1969, at or near 300 block North 6th Street, St. Joseph, Missouri, and I/we hereby acknowledge full settlement and satisfaction of all claims of whatever kind or character which I/we may have against him or them by reason of the above mentioned damages, losses or injuries."

The basic rule in Missouri release law is found in Vondera v. Chapman, 352 Mo. 1034, 180 S.W.2d 704, which involved a $25,000 action for personal injuries growing out of an automobile collision. The answer set up a release, executed nine days after the collision, for $175, in full settle-

ment for all "not only now known injuries, losses and damages, but any future injuries, losses and damages not now known or anticipated but which may later develop or be discovered, including all the effects and consequences thereof." Plaintiff replied that the release was executed at a time when the only injuries to plaintiff known to either side were superficial and slight; that the amount paid was considered by both sides to be fair and reasonable compensation for the injuries then known; that shortly thereafter she discovered the injuries were much greater, that had she known of these injuries she would not have settled for so small a sum and the settlement was made as result of mutual mistake as to the extent of injuries.

The court sustained a demurrer to the reply and entered judgment for defendant, which was affirmed on appeal. The court pointed out there was no charge of fraud or unfair dealing and said at 180 S.W.2d 1. c. 705: ". . . The parties dealt at arm's length, in good faith, and the release expressly stated that it covered unknown damages which might later develop. There is no claim now that the release failed to express the intent which the parties had at the time of settlement. The only claim of mistake is that, although appellant settled for future damages, she did not know the extent of her injuries, and, if she had, would not have settled for the amount paid her."

■ The court went on to say, 180 S. W.2d 1. c. 705–706: ". . . It is the policy of the law to encourage freedom of contract and the peaceful settlement of disputes. A person under no disability and under no compulsion may convey his property or relinquish his rights for as small consideration as he may decide. To hold otherwise, while it would relieve the instant appellant of the effects of a bad bargain, would establish a harmful precedent not only as to personal injury claims, but as to contracts in general. Such a policy would make it difficult to settle controver-

sies respecting damages to person or property without resort to the courts."

In Kavadas v. St. Louis Southwestern Ry. Co., (Mo.App.) 263 S.W.2d 736, plaintiff's judgment of $3,700 for personal injuries was reversed because of a release executed by him for a consideration of $12.18 (apparently the amount of pay lost by plaintiff for the one day he was off work). After holding there was no evidence to support the claim the release was invalid because of false representations, the court pointed out mere inadequacy of consideration was no valid ground for relief, citing the Vondera case, and upheld the release despite the fact that at the time the settlement was made it did not appear that plaintiff had sustained any disabling injuries or that a settlement based on payment of wages lost was inadequate, 263 S.W.2d 1. c. 740. The same is true of the case before us.

The Vondera case was followed in Benton v. Smith, (Mo.App.) 389 S.W.2d 392, where plaintiff and her husband settled with the liability insurance company for $325.32 following an automobile accident where the parties did not believe Mrs. Benton had sustained any serious injuries. It turned out she had a herniated disc and eventually incurred over $4,000 in medical and hospital expense and loss of time. The release executed was substantially the same as that in the present case. The court held the case was "on all fours with the Vondera case" and affirmed the action of the trial court in directing a verdict for defendant.

See also, Sosa v. Velvet Dairy Stores, Inc., (Mo.App.) 407 S.W.2d 615, 621–622, where plaintiff sought to avoid her release on the ground of mutual mistake as to the extent of her injuries, and the court, after pointing out that the law ". . . does not go to the romantic length of establishing the relation of guardian and ward between the courts and adults who are in full possession of their faculties and capable of managing their own affairs, and to indem-

nify them from the consequences of their own actions which they later regret. . .", refused to upset the release, saying: ". . . We are of the opinion that appellant should be bound by her own bargain. If releases were to be easily set aside and settlements ignored, chaos would result. Defendants and their insurance carriers would be discouraged from settling claims and taking releases for personal injuries and would resort to the courts for a determination. This would be costly, time consuming, and burdensome on the parties involved, their attorneys, and the courts. The law favors settlements fairly made. . . ."

A recent statement of the rule appears in Stahly Cartage Co. v. State Farm Mut. Auto. Ins. Co., (Mo.App.) 475 S.W.2d 438, 441–442: "Our Missouri reports are replete with cases in which a claimant, having entered into a settlement of his claim and executed a release, for one reason or another has sought to repudiate the release and bring suit upon his original cause of action . . . . The thrust of those cases is that in the absence of fraud, misrepresentation for other unfair dealing a release is not invalid because of a unilateral mistake . . . .

". . .

"A document termed a release is in essence a written contract of compromise and settlement . . . . A written contract, fairly entered into, would be no more than a scrap of paper if it was not binding on both parties according to its terms . . . ."

■ Plaintiff relies on Goodman v. Missouri Pacific Railroad Company, (Mo.Sup.) 312 S.W.2d 42, to support his contention that the present case is one of mutual mistake, but Goodman was a case under the Federal Employers' Liability Act, and, as said in Cleghorn v. Terminal Railroad Assn. of St. Louis (Mo.Sup.) 289 S.W.2d 13, 21, "The question of the validity of a release given a carrier by an injured employee is a federal question to be determined by federal rather than state law." The Goodman case, therefore, is not controlling in the present case, which turns on state law as declared in Vondera, supra.

■ In the case at bar, plaintiff testified defendant did not high pressure him, influence him, rush him, or deny him the opportunity to read the release. It is true plaintiff said he thought he was signing a receipt, but as said in Higgins v. American Car Co., 324 Mo. 189, 22 S.W.2d 1043, 1044, "The rule is that the one who signs a paper, without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents. . . ."

■ It is quite clear there could not be any mutual mistake here as to what was in the release. The releasee prepares the instrument and knows what it is and what it contains. By its terms the parties agreed the release was to apply to unknown injuries as well as known injuries. There is no element present of any examination of plaintiff by defendant's doctor with reliance on an assurance of no injuries of consequence. In fact, defendant made no effort to find out what the injuries were and indeed was indifferent. What defendant was interested in was a release of liability from plaintiff and it cannot be said that defendant would not have entered into the release had its representative actually known of plaintiff's injuries.

■ Releasees do not make settlement and take general releases merely to pay the releasor the first installment on what he should have, leaving the matter open for the releasor to come back for more if his injuries prove serious. On the contrary, a settlement is made and a general release taken for the purpose of foreclosing further claims. The releasee does not stand in a fiduciary relation to the releasor.

**482**

The injured party is not required to make a settlement, and the general rule of freedom of contract includes the freedom to make a bad bargain.

On the undisputed facts before us, the court should have directed a verdict in favor of the defendant.

Judgment reversed.

FINCH, C. J., and DONNELLY, HOLMAN and HENLEY, JJ., concur.

MORGAN, J., concurs in result.

BARDGETT, J., concurs in result because the evidence, at most, supported a finding of unilateral mistake of fact, not a mutual mistake of fact.