Joy C. Lansdown AUSTIN and Ransford A. Austin, Plaintiffs–Appellants,

v.

TROTTER'S CORPORATION, Great Central Insurance Company, GAB Business Services, Inc., Donald M. Johnson and Mark P. Lucas, Defendants–Respondents.

No. 17199.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 1991.

David F. Sullivan, Schmidt, Kirby & Sullivan, P.C., Springfield, for plaintiffs-appellants.

Raymond E. Whiteaker, Janis L. Prewitt, Woolsey, Fisher, Whiteaker & McDonald, Rae L. Nickell, Springfield, for defendants-respondents.

FLANIGAN, Chief Judge.

Plaintiffs Joy Austin ("Joy"), and Ransford Austin, her husband, filed this action against defendant Trotter's Corporation ("Trotter's"). The petition alleged that on December 18, 1987, Joy was an invitee in defendant Trotter's restaurant in Springfield and sustained a fall as a result of Trotter's negligence. Joy sought damages for personal injuries and losses she sus-

tained as a result of the fall. Ransford sought recovery on his claim for loss of services of his spouse.

While the action was pending on the original petition, the trial court entered its order sustaining Trotter's motion for summary judgment with respect to the claim of Joy. Trotter's motion was based on a release executed by Joy in favor of Trotter's on February 15, 1988.

Thereafter, the plaintiffs filed an amended petition and added these four defendants: Great Central Insurance Company ("Great Central"), GAB Business Services, Inc. ("GAB"), Donald M. Johnson, and Mark P. Lucas. Count III of the amended petition was filed by both plaintiffs and directed against Great Central, GAB, and Johnson. The trial court sustained Great Central's motion to dismiss Count III and a separate motion to dismiss Count III filed by GAB and Johnson. Count IV of the amended petition was filed by Joy against Great Central and Mark Lucas. The trial court sustained Great Central's motion to dismiss Count IV and a separate motion of Mark Lucas to dismiss Count IV for lack of personal jurisdiction.

With respect to its rulings on Counts III and IV, and its sustention of Trotter's motion for summary judgment with respect to Joy, the trial court entered a determination that there was no just reason for delay and designated each of those rulings final for purposes of appeal. Plaintiffs appeal.

Plaintiffs' first point is that the trial court erred in sustaining Trotter's motion for summary judgment with respect to the claim of Joy because there were genuine issues of material facts concerning the release, in that Joy "contested (sic) that the release was not intended to be a full and final release of all claims, was not supported by consideration, and/or was obtained by means of misrepresentation, fraud, and/or mistake."

Trotter's motion for summary judgment, with respect to the claim of Joy, was based

on a release. The motion was supported by the affidavit of Donald Johnson, responses of plaintiffs to requests for admissions, the release itself, and the draft issued to Joy for the release.

According to the affidavit of Johnson, based on his personal knowledge as an adjuster for Trotter's insurer, Johnson mailed the release and a "medical proof of loss" to Joy. After retaining the documents in her possession for several days, Joy returned the documents to Johnson. The documents were "signed, witnessed, and notarized." While Joy had the release in her possession, she telephoned Johnson and "inquired as to exactly what the nature of the document was that she was signing." Johnson informed Joy that she was signing a release. Trotter's insurer, Great Central, issued a check to Joy in the amount of $291.49 for medical payments, and issued a check [1] in the amount of $180 to Joy as consideration for the release.

Plaintiffs admitted that Joy signed the release on February 15, 1988, that Joy was paid the sum of $180 by Great Central, and that Joy delivered the release to Johnson.

The release was signed by Joy on February 15, 1988, and witnessed by Mary L. Willard. By its terms, Joy, "for and in consideration of the sum of One Hundred Eighty ($180) Dollars, the receipt and sufficiency of which is hereby acknowledged," released Trotter's from all claims and causes of action arising out of the occurrence of December 18, 1988 (sic) [2] at "Trotter's Restaurant—Springfield, Mo."

In opposition to Trotter's motion for summary judgment, Joy filed an affidavit which, omitting its formal portions, reads: "The release which Trotter's Corporation has raised as a defense in this case is not supported by good and valuable consideration, and this plaintiff denies that any consideration was given for said release. In addition, representations were made by defendant's insurance carrier that the release presented for signature by this plaintiff

---

**1.** The two "checks" were drafts.

**2.** The fall took place on December 18, 1987. No party mentions the obvious misprint in the re-

lease with respect to the year of the occurrence. The correct year is shown on the $180 draft which describes the date of loss as 12–18–87.

was not a full and total release of all claims. Therefore, said release was obtained by misrepresentation, fraud or, at least, through mistake."

"Summary judgment is an extreme, drastic remedy and may be employed only where there are no genuine issues of fact and where the moving party is entitled to judgment as a matter of law.... " *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384, 385–386 (Mo. banc 1991). On review, the appellate court examines the record in the light most favorable to the party against whom a summary judgment was rendered. *Id.*, at 385–386. The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact. A genuine issue of fact exists when there is the slightest doubt about a fact. *Mahurin v. St. Luke's Hosp.*, 809 S.W.2d 418, 421 (Mo.App.1991).

Rule 74.04(e),[3] which deals with the form of affidavits supporting or opposing a motion for summary judgment, reads, in pertinent part:

"Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this Rule 74.04, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis added.)

▮ An affidavit which fails to aver specific facts and relies only upon mere doubt and speculation fails to raise any issue of material fact. *St. Charles County v. Dardenne Realty Co.*, 771 S.W.2d 828, 830[6] (Mo. banc 1989). Conclusory allega-

tions are not sufficient to raise a question of fact in summary judgment proceedings. *Missouri Ins. Guar. Ass'n v. Wal–Mart*, 811 S.W.2d 28, 34[18] (Mo.App.1991). Conclusions of law in affidavits are of no effect. *Stoffel v. Mayfair–Lennox Hotels, Inc.*, 387 S.W.2d 188, 192 (Mo.App.1965).

Joy admitted signing the release and thus she had "the burden of proving its invalidity." *Gast v. Ebert*, 739 S.W.2d 545, 547 (Mo. banc 1987). See also *Landmark N. Cty. Bank v. Nat. Cable Tr.*, 738 S.W.2d 886, 890 (Mo.App.1987).

"The burden of proving consideration is upon the party relying on the agreement.... That burden is met by the introduction in evidence of the written agreement which recites consideration. 'The recitation of consideration in an agreement is prima facie evidence that consideration to support the agreement was present; it creates a presumption that the recitals are true, which presumption continues unless overcome by evidence to the contrary.' "

*Id.* at 891.

In *Sanger v. Yellow Cab Company, Inc.*, 486 S.W.2d 477, 481–482 (Mo. banc 1972), the court said:

"Releasees do not make settlement and take general releases merely to pay the releasor the first installment on what he should have, leaving the matter open for the releasor to come back for more if his injuries prove serious. On the contrary, a settlement is made and a general release taken for the purpose of foreclosing further claims. The releasee does not stand in a fiduciary relation to the releasor. The injured party is not required to make a settlement, and the general rule of freedom of contract includes the freedom to make a bad bargain."

In *Sanger* the issue was whether the release was procured by mutual mistake. There was no claim of fraud.

---

**3.** Except where otherwise indicated, all references to rules are to Missouri Rules of Court,

V.A.M.R.

In *Higgins v. American Car Co.*, 324 Mo. 189, 22 S.W.2d 1043 (1929), plaintiff signed a general release for a personal injury claim but testified that the releasee's claim agent said the release "was only a receipt for wages lost." Plaintiff asserted that the release was procured by fraud. In *Higgins*, the court said, 22 S.W.2d at 1044:

"The rule is that the one who signs a paper without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, *unless there was something more than mere reliance upon the statements of another as to its contents.*" (Emphasis added.)

The foregoing language in *Higgins* was quoted with approval in *Sanger*, 486 S.W.2d at 481.

In *Poe v. Illinois Cent. R. Co.*, 339 Mo. 1025, 99 S.W.2d 82 (1936), the court discussed many Missouri cases dealing with releases which were attacked as having been obtained by fraud. The court said, 99 S.W.2d at 88:

"An analysis of the cases reveals that they turn on the nature of the transaction involved, the representations made by the representor, the relation existing between the parties—whether one of trust, or confidence, or friendship, or close acquaintance, or that of strangers dealing at arm's length—or the trick or artifice, if any, employed."

99 S.W.2d at 89–90 the court said:

"While the law affords every one reasonable protection against fraud, it does not go to the romantic length of establishing the relation of parent and child or guardian and ward between courts and adults capable of managing their affairs, in full possession of their faculties and unrestrained in action, and indemnify them when dealing at arm's length against the consequences of their own indolence, listless inattention, or unwarranted credulity in the transaction of business affairs. Under the authority of the *Dryssen* [*v. Union Electric Light & Power Co.*, 317 Mo. 221, 295 S.W. 116 (1927)], *Higgins, Brennecke* [*v. Ganahl Lumber Co.*, 329 Mo. 341, 44 S.W.2d 627 (1931)], *Hannah* [*v. Butts*, 330 Mo. 876, 51 S.W.2d 4 (1932)], and *Alford* [*v. Wabash Ry. Co.*, 229 Mo.App. 102, 73 S.W.2d 277 (1934)] Cases (*to the effect, as between parties dealing at arm's length, a representation that a release is merely a receipt is not, standing alone, actionable fraud*) and the *Conklin* [*v. Missouri Pac. R. Co.*, 331 Mo. 734, 55 S.W.2d 306 (1932)] Case (to the effect that the courts will not protect those, who with full opportunity to do so, will not protect themselves), supra, defendant's demurrer should have been sustained. The most casual glance at the printed portions of the release or release-draft by one able to read would have disclosed the contract was one of release and settlement; and the case appears to be within the observation in *Judd v. Walker*, 215 Mo. 312, 337, 114 S.W. 979, 980: 'If one voluntarily shuts his eyes when to open them is to see, such a one is guilty of an act of folly (in dealing at arm's length with another) to his own injury; and the affairs of men could not go on if courts were being called upon to rip up transactions of that sort.'"[4] (Emphasis added.)

4. In *Gast v. Ebert*, 739 S.W.2d 545, 547 (Mo. banc 1987), the court said:

"In their affidavit, plaintiffs state that they were told by the defendant's insurer that the agreement which they signed was merely a receipt for moneys received to cover their daughter's medical bills. The counter-affidavit of insurer's claims representative states that the Gasts were not told that the agreement was merely a receipt for reimbursement of medical expenses. Based on these affidavits, there is a genuine dispute as to whether a representation was made. If the statement was made, and it must be assumed that it was since the record is viewed in the light most favorable to the plaintiffs, the representation was admittedly false because the defendant is attempting to enforce the agreement as a complete and binding release. The representation was clearly material since the plaintiffs' cause of action hinges on whether the document which they signed was a binding release or merely a receipt."

The court, in *Gast*, made no mention of *Poe* or the five cases cited in it to the effect that a representation that a release is merely a receipt

■ Joy's affidavit, quoted above, contains three sentences. The first sentence says, in part, that the release is not supported by good and valuable consideration. That is a legal conclusion which is contrary to the fact contained in Johnson's affidavit, and admitted by Joy, that Joy received $180 for the release. The release itself recited that payment. The second half of the first sentence of Joy's affidavit contains her denial that "any consideration was given for said release." That statement is flatly contradicted by Joy's own admission that she was paid $180.00. If the first sentence of Joy's affidavit were held to be sufficient, she would be profiting by the fact that she herself makes conflicting statements. On this record, the first sentence is a false conclusion.

The second sentence of Joy's affidavit is an example of gamesmanship. It refers to "representations made by defendants' insurance carrier." The speaker or writer of the alleged representations is not identified. An "insurance carrier" speaks only through human beings, and no such person is named. It would be most charitable to construe the second sentence of Joy's affidavit to say "Johnson—or some other specific person—told me that the release was not a full and total release of all claims." Even if that construction is accorded the second sentence of Joy's affidavit, under the circumstances here it is inadequate.

The nine elements of fraudulent misrepresentations are set forth in *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987). The first two elements are "a representation" and "its falsity." The second sentence of Joy's affidavit does not satisfy those two elements. This release was "not a full and total release of all claims," the statement Joy attributes to the unidentified person, because there was a medical pay-

ments provision in the Great Central policy and Joy in fact was paid, separately, $291.49 for medical payments. Indeed, in Count II of the amended petition, which is still pending in the trial court, plaintiffs seek recovery from Great Central under the medical payments provision of its policy. Thus, the representation, and there is only one, alluded to in the second sentence of Joy's affidavit was not false, even if that representation was made. Johnson, of course, denied making it, but that alone is of no moment.

The third sentence of Joy's affidavit is only a legal conclusion. Indeed, by the manner in which Joy phrases it, she expresses a lack of confidence in her claim of fraud because she qualifies her conclusion by saying, "or, at least, through mistake." No facts are stated on which to base a claim of mistake.[5]

Plaintiffs' first point merely parrots the language of Joy's affidavit. The same is true of their argument under their first point. Neither the point nor the argument tells this court specifically what issue of material fact existed which would serve to invalidate the trial court's ruling on Trotter's motion for summary judgment.

In *Wagoner v. Mountain Savings & Loan Association*, 311 F.2d 403 (10th Cir. 1962), a somewhat similar factual situation existed. The trial court sustained defendant's motion for summary judgment based upon the execution of a release and the plaintiffs' affidavits opposing the motion were insufficient. The court said, at 406:

"Summary judgment is the proper procedural instrument to bring to the front of formal pleadings the legal effect of the releases. *The very purpose of summary proceedings is to pierce the sham of false generality of claims.* The futili-

is not, standing alone, actionable fraud. See also *Higgins* and *Sanger* cited above.

In the case at bar, Joy's affidavit makes no reference to a receipt, nor does she state that she was told the release was "merely a receipt."

**5.** In *Bogus v. Birenbaum*, 375 S.W.2d 156, 160 (Mo.1964), the court said:

"The cancellation of a release on the ground of a mistake is ordinarily granted only where

the mistake is mutual, but it will be granted where the mistake of one party is either known to the other party or is so obvious that it must have been known to him and the mistake concerns a matter so vital that it could be said that the parties, because of miscalculation or false information, never actually agreed to the same proposition."

ty of a trial upon primary issues is apparent if the validity of the releases is to be ultimately determinative of the case. And the compulsion of [Federal] Rule 56 cannot be thwarted by the allegation of conclusion or general denial." (Emphasis added.)

This court holds that the trial court did not err in sustaining Trotter's motion for summary judgment. Plaintiffs' first point has no merit.

Plaintiffs' second point is that the trial court erred in sustaining Great Central's motion to dismiss Count III and a separate motion to dismiss Count III filed by GAB and Johnson "because once [Joy's] underlying cause of action for personal injuries was extinguished by the summary judgment, Joy was entitled to prosecute her independent cause of action for fraud in the inducement and/or execution of the subject release."

Count III of the amended petition is prolix. Joy's own description of Count III is that it asserts "a cause of action against Great Central, GAB and Johnson on the theory that the subject release was obtained through fraud." Joy also says that the trial court has, by summary judgment, extinguished her underlying cause of action in tort based upon the release, and that "the enforcement of the release which extinguished her underlying cause of action has given rise to a separate and independent cause of action against Great Central, GAB and Johnson for fraud in the inducement and/or the execution of the release."

In *Bockover v. Stemmerman*, 708 S.W.2d 179, 181–182 (Mo.App.1986), the court said:

"[W]here a release had been fraudulently obtained, there is no independent cause of action for the fraud practiced in obtaining the release. A release falls within this exception because if the allegation concerning the fraud which induced one to sign the release is true then the release is void both in law and in equity, and in executing the release the party has parted with nothing. The original cause of action remains viable and the release obtained by fraud will not bar

that action. Since the underlying cause of action is not extinguished when the release is obtained by fraud, the party giving such release retains his right to recover on the underlying tort as if the release had not been given and therefore suffers no damage as a result of the fraud. For this reason there is no independent cause of action for fraud practiced in obtaining a release."

In making the foregoing statement, the court relied on *Mackley v. Allstate Insurance Co.*, 564 S.W.2d 634 (Mo.App.1978), which in turn relied on *Lomax v. Southwest Missouri Electric Ry. Co.*, 106 Mo. App. 551, 81 S.W. 225 (1904).

The court, in *Mackley*, pointed out that some jurisdictions do recognize that the releasor of an unliquidated tort claim may stand on a *fraudulently* induced release and maintain an action for fraud and deceit for the damages growing out of the fraud practiced upon him by a person other than the releasee. See, generally, 58 A.L.R.2d 500 (Right of action for fraud, duress or the like causing instant plaintiff to release or compromise a cause of action against a third person).

The court, in *Mackley*, relied primarily on *Lomax* and said, at 637, that "*Lomax* has not been vitiated or overruled by *Metropolitan Paving Co. v. Brown–Crummer Inv. Co.*, [309 Mo. 638, 274 S.W. 815 (banc 1925) ]."

*Bockover, Mackley,* and *Lomax* support the trial court's dismissal of Count III. Since there is an independent reason why that dismissal is sound, it is unnecessary for this court to determine if it agrees with the Western District that *Lomax* was not overruled by *Metropolitan Paving Co.*

By reason of the trial court's ruling on Trotter's motion for summary judgment, and this court's affirmance of that ruling, the release is valid and untainted by fraud. The issue of whether fraud was practiced by anyone upon Joy in order to obtain execution of the release has now been set at rest. Count III is based upon the allegation that such fraud existed and it has now been determined that fraud did not exist.

In *Sunshine Realty v. Killian,* 702 S.W.2d 95, 98–101 (Mo.App.1985), this court discussed the doctrine of collateral estoppel, set forth the elements of that doctrine, and pointed out that it precludes the reexamination of previously litigated issues whether those issues are of fact or law. This court also pointed out that the doctrine may properly come into play "on the basis of an adjudication of a portion of one proceeding when that portion has become final prior to the review of other portions of that proceeding." *Id.* at 99.

■ Count III is bottomed on a theory of fraud. This court's affirmance of the trial court's ruling on Trotter's motion for summary judgment decides the issue of fraud against Joy. It follows that Count III is now barred by collateral estoppel, and plaintiffs were not prejudiced by the order of the trial court dismissing Count III. "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b). Plaintiffs' second point has no merit.

Plaintiffs' third point is that the trial court erred in sustaining Great Central's motion to dismiss Count IV of the amended petition "on the ground that the cause of action on the insurance policy, as pleaded in Count II of the amended petition, is plaintiffs' exclusive remedy because Supreme Court Rule 55.10 permits a party to plead in the alternative."

Great Central's motion, directed to Count IV, included the ground that Count IV failed to state a claim upon which relief may be granted against Great Central, (the "no claim ground"). The motion was sustained. Plaintiffs' third point makes no mention of the "no claim ground" on which the trial court's ruling on Count III was, at least in part, based.

■ "The burden is on the appealing parties to demonstrate error." *State, et al., Plaza Prop. v. Kansas City,* 687 S.W.2d 875, 876[2] (Mo. banc 1985). On appeal, the trial court's judgment is presumed valid, and the burden is on appel-

lants to demonstrate incorrectness of the judgment. *Delaney v. Gibson,* 639 S.W.2d 601, 604[4] (Mo. banc 1982). A point relied on must state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. Rule 84.04(d). Allegations of error not briefed or not properly briefed shall not be considered in any civil appeal. Rule 84.13(a).

■ If the trial court states no reason for dismissal, the appellate court will assume it acted for reasons offered in the motion to dismiss. *Chase Elec. Co. v. Acme Battery Mfg. Co.,* 798 S.W.2d 204, 207[1] (Mo.App.1990). The appellate court will sustain a judgment of dismissal if any of the grounds for dismissal is proper. *Sullivan v. Pulitzer Broadcasting Co.,* 709 S.W.2d 475, 476 (Mo. banc 1986); *Henry v. Taft Television & Radio Co.,* 774 S.W.2d 889, 890[1] (Mo.App.1989).

In order for this court to interfere with the trial court's dismissal of Count IV with respect to Great Central, it would have to conduct its own inquiry into the adequacy of Count IV to state a claim for relief. The statement of facts portion of plaintiffs' brief does not set forth any of the allegations of Count IV. The only reference to Count IV is this statement: "Appellant [Joy] sought recovery against [Great Central] on the theory of promissory estoppel."

Plaintiffs' third point has no merit because it fails to address the propriety of the trial court's dismissal on the "no claim ground" and because plaintiffs have failed to sustain their burden of showing that a dismissal on that ground was improper.

Plaintiffs' fourth point is that the trial court erred in sustaining the motion of defendant Mark Lucas to dismiss Count IV for lack of jurisdiction over his person because "a prima facie showing was made by plaintiffs that Lucas made a contract within this state and transacted business within this state and therefore Lucas was subject to the personal jurisdiction of the trial court under Rule 54.06(a)(1) and (2)."

In their argument under this point, plaintiffs state: Count IV alleges that Lucas made a contract in Missouri; Joy spoke

with Lucas by telephone and informed him that she needed further medical and hospital treatment; Lucas promised that Great Central would authorize such treatment and would be responsible for the payment of the medical expenses incurred therefor; Joy relied on this promise and incurred medical expenses for said treatment; Lucas was an employee and agent for Great Central and performed his claim services, with respect to plaintiffs' claims, within the scope and course of his employment with Great Central.

In response to this point, Lucas advances two independent grounds in support of the trial court's dismissal. The grounds are: (1) Count IV shows on its face that Lucas cannot be personally liable and therefore no claim was stated against Lucas for which relief can be granted, and (2) there was lack of personal jurisdiction over Lucas.

The soundness of ground (1) makes it unnecessary to consider whether ground (2) is also sound.

"An agent is not liable for lawful acts done within the scope of his authority for and on behalf of a disclosed principal. The liability, if any, is that of the principal. If a contract is made with a known agent acting within the scope of his authority for a disclosed principal, the contract is that of the principal alone and the agent cannot be held liable thereon, unless credit has been given expressly and exclusively to the agent and it appears that it was clearly his intention to assume the obligation as a personal liability and that he has been informed that credit has been extended to him alone." 3 Am.Jur.2d, Agency § 302.

Missouri cases supporting the foregoing principles include *State ex rel. Ranni Assoc. v. Hartenbach,* 742 S.W.2d 134, 140[12] (Mo. banc 1987); *Hunt v. Sanders,* 313 Mo. 169, 281 S.W. 422, 425[3] (1926); *Moore v. Seabaugh,* 684 S.W.2d 492, 494[1, 2] (Mo.App.1984); *Hamilton Music v. Gordon A. Gundaker Real Est.,* 666 S.W.2d 840, 845[14] (Mo.App.1984).

Although Lucas's motion to dismiss did not specifically raise ground (1), that ground is properly asserted, even though it is raised initially on appeal. Rule 55.-27(g)(2). Plaintiffs filed no reply brief and, perhaps understandably, make no effort to counter ground (1). Plaintiffs' fourth point has no merit.

This court holds that the trial court did not err in granting Trotter's motion for summary judgment with respect to Joy and in dismissing Count III and Count IV of the amended petition. The summary judgment entered in favor of Trotter's Corporation on March 13, 1989, and those portions of the order of November 17, 1980, which dismiss Counts III and IV of the amended petition are affirmed. It is so ordered.

PARRISH, P.J. and SHRUM, J., concur.