**VISTA RAIL, INC., Respondent,**

v.

**BRANSON SCENIC RAILWAY, INC., and Saul Kass, Appellants.**

**No. WD 52659.**

Missouri Court of Appeals, Western District.

May 20, 1997.

Daniel Herrington, Kansas City, for Appellants.

B. Scott Tschudy, Overland Park, KS, for Respondent.

SPINDEN, Judge.

Vista Rail, Inc., leased a railcar to Branson Scenic Railway, Inc., which operated a passenger excursion railroad. In 1994 the two firms became enmeshed in an argument over how much Branson Scenic Railway (BSR) owed Vista Rail for use of the railcar. On August 30, 1994, the firms agreed that BSR would pay $43,000, and BSR gave Vista Rail a promissory note for that amount. Saul Kass, BSR's treasurer, guaranteed the note. Vista Rail sued BSR in January 1995 contending that BSR was in default on the note and owed $38,000 plus interest. On December 15, 1995, the circuit court entered summary judgment for Vista Rail for $48,704.23 plus post-judgment interest on the promissory note. It also entered summary judgment in favor of Vista Rail for railcar repairs

---

1. All references are to Missouri Revised Statutes, 1994, unless otherwise indicated.

under the lease. We affirm in part and reverse in part.

In its first point on appeal, BSR contends that the circuit court erred in granting summary judgment on the promissory note by failing to interpret that BSR's obligation to pay the note was conditioned on performance of a simultaneous, collateral agreement by Gary L. Matthews, a shareholder in BSR and Vista Rail. BSR contends that Matthews breached the collateral resignation agreement, and this relieved BSR of its obligation to pay the note.

On August 24, 1994, Matthews had signed a resignation as an officer and director of BSR. His resignation said:

Effective immediately, (a) I will refrain from holding myself out as an officer, director, owner, representative, agent or affiliate of [BSR]; (b) I will not interfere or cause disruptions with the business or relationships between [BSR] and its agents, employees, contractors, vendors, customers and contracting parties and (c) I will not visit any facilities, offices or operations of [BSR] unless accompanied by an authorized representative of [BSR].

BSR contends that Matthews breached his promises by helping organize a competing excursion railroad which obtained track rights which conflicted with BSR's track rights.

The circuit court noted the resignation and a collateral redemption and release agreement, but it ruled that neither agreement affected BSR's obligation to pay the note. BSR contends that this was an issue of material fact which should have resulted in the circuit court's denial of Vista Rail's motion for summary judgment. We disagree.

The redemption and release agreement on which BSR relies purported to incorporate that agreement with the promissory note, restated lease, guaranty by Kass, and Matthew's resignation. All documents were signed on August 30, 1994, except for Matthew's resignation. The redemption and release agreement said:

4. *Payment by BSR.* BSR shall pay to each of Vista and Matthews the amounts payable in accordance with paragraphs 1 and 3 above pursuant to two promissory notes, each note executed by BSR and guaranteed by Saul Kass.

. . . .

5. *Conditions Precedent.* Conditions precedent to the execution and delivery of this Agreement are as follows: (a) BSR and Vista amend and restate the Lease to provide for future maximum monthly rentals payable by BSR to Vista of $6,000, plus insurance and minor repairs, such amendment and restatement to be substantially in the form attached hereto as Exhibit D (the "Amended and Restated Lease") and (b) Matthews resign as an officer and director of BSR, effective immediately, pursuant to a written resignation, substantially in the form attached hereto as Exhibit E (the "Resignation").

BSR argues, "Matthews execution of and compliance with the resignation agreement was a condition precedent to BSR's and Kass' agreement to pay Vista Rail." Paragraph 5 of the redemption and release agreement conditioned the agreement's "execution and delivery" on Matthews' resignation "pursuant to a written resignation" in the form prescribed. We do not find language in either the redemption and release agreement or the promissory note conditioning BSR's obligation to pay the note on Matthews' compliance with the resignation agreement. Moreover, paragraph 5 provided that Matthews' agreement was a condition precedent to "the execution and delivery" of the redemption and release agreement. It was not a condition precedent to BSR's performance, including its obligation to pay the note.

The essence of paragraph 5 was that BSR was obligated to sign the redemption and release agreement only if Matthews resigned in the way prescribed. That Matthews did resign pursuant to a written resignation in the form prescribed is not in dispute. With the fulfillment of that condition, BSR was obligated to execute the redemption and release agreement, and it did. We find nothing linking Matthews' behavior after executing his written resignation with BSR's obligation. Perhaps BSR has an independent cause of action against Matthews for breaching the promises he made in his resignation, but

Matthews' breach does not relieve BSR's obligation to pay the note. The circuit court's ruling was correct.

■ BSR is also incorrect in contending in its second point that the circuit court erred in granting summary judgment in the face of its affirmative defense that Vista Rail fraudulently induced it to execute the promissory note. BSR contends that it established a factual issue concerning its fraud claim with the affidavit of Thomas L. Johnson, BSR's president.

Johnson's affidavit said that BSR had purchased track usage from Missouri & Northern Arkansas Railroad Company, Inc. (MNA). He said that MNA had sold it the exclusive right to operate passenger service on 44 miles of MNA track and an "exclusive option" to buy the right to use more of MNA's track. Johnson said that in September 1994 a competing excursion railroad, White River Railroad, purchased from MNA the right to operate passenger service on all but the 44 miles held by BSR, and that Matthews "may have" caused the conflict with White River. "Had BSR known of Mr. Matthews' intention to become involved in the start up and operation of a competing rail service," Johnson's affidavit said, "BSR would not have executed a promissory note in favor of Vista Rail."

Johnson's affidavit acknowledged, however, that he was only speculating that Matthews was involved in helping White River obtain usage of MNA track. It "may have resulted from the conduct of Mr. Matthews," the affidavit said. "BSR believes that through additional discovery, it will be able to definitively establish or at least make it an issue of fact as to whether Matthews had an intent to start up a competing rail service prior to BSR executing the $43,000 promissory note on August 30, 1994."

At oral argument on the motion, however, BSR no longer acknowledged that the gap in evidence existed, and it did not mention the need for more discovery. Instead, it argued to the circuit court:

> White River Railway's contract says they have rights to all track beyond the 44 miles[.] Branson Scenic Railway's contract says you have the rights to the 44 miles and you have an option to the rest of it. That conflict came into being because Matthews got together with Larry Fields[, an officer for MNA and a shareholder of White River], caused the second contract to be executed and didn't disclose to MNA Fields' ownership.

BSR did not explain the basis for its contention that "Matthews got together with Larry Fields." We find nothing in the record, other than Johnson's speculation, supporting the contention.

Rule 74.04(c)(2) says:

> If the party opposing a motion for summary judgment has not had sufficient time to conduct discovery on the issues to be decided in the motion for summary judgment, such party shall file an affidavit describing the additional discovery needed in order to respond to the motion for summary judgment and the efforts previously made to obtain such discovery. For good cause shown, the court may continue the motion for summary judgment for a reasonable time to allow the party to complete such discovery.

We find no such affidavit. Johnson's affidavit mentioned a need for more discovery, but BSR did not pursue the issue at oral argument on the motion.

Johnson's affidavit did not create a factual issue concerning Matthews' involvement in White River's contract with MNA. Rule 74.04(e) requires that affidavits "set forth such facts as would be admissible in evidence," and it requires that affidavits responding to a motion "set forth *specific* facts showing that there is a genuine issue for trial."

> An affidavit which relies on ... speculation fails to create a genuine issue of material fact.... Conclusional allegations as well as statements that a party will provide evidence of genuine fact issues at trial are insufficient. The party must show that a genuine issue of fact does exist, not that it might exist.

*A & M Building, Inc. v. Wiles,* 859 S.W.2d 183, 187 (Mo.App.1993).

We find nothing else showing any action by Matthews which arguably constituted an interference with BSR's business or relationships with its contractors or vendors. Hence, the circuit court was correct that it did not have a factual basis for concluding that Matthews' actions constituted fraudulent inducement. We reject this point.

 In its third point, BSR contends that the circuit court erroneously concluded that it had not established a genuine issue of material fact concerning whether the costs Vista Rail sought in Count II of its petition constituted repairs compensable under the lease. BSR had agreed to pay for the railcar's "normal running maintenance." Vista Rail was responsible for everything "beyond" normal running maintenance. In Count II, Vista Rail prayed for $6904.58 to reimburse it for repairs to the rail passenger car which it contends BSR should have paid under its obligation to pay for normal running maintenance.

In support of its motion for summary judgment on the claim, Vista Rail submitted Matthews' affidavit which said, "When BSR returned the [railcar] to Vista, Vista was required to undertake and pay for certain repairs and routine maintenance to the [railcar] which should have been performed by BSR." BSR countered with Johnson's affidavit which said, "With the exception of the cleaning items and lost items referenced in Vista Rail's demand for reimbursement, the repairs for which Vista Rail seeks reimbursement constitute items beyond normal running maintenance."

The circuit court did not have a sufficient basis for issuing summary judgment for Vista Rail on this issue. Although BSR countered Vista Rail's motion with the most general of allegations—contrary to Rule 74.04(e)'s mandate for "specific facts"—Vista Rail's allegation was not stated in specific terms either—contrary to Rule 74.04(c)(1). The record does not establish sufficient detail for the circuit court or for us to determine whether the repairs were normal running maintenance.

"An affidavit which fails to aver specific facts … fails to raise any issue of material fact. Conclusory allegations are not suffi-

cient to raise a question of fact in summary judgment proceedings. Conclusions of law in affidavits are of no effect." *Weaver v. State Farm Mutual Automobile Insurance Company*, 936 S.W.2d 818, 822 (Mo. banc 1997)(quoting *Austin v. Trotters Corporation*, 815 S.W.2d 951, 953 (Mo.App.1991)).

Hence, we reverse the circuit court's summary judgment on Count II and remand for further proceedings on that issue. We affirm the circuit court's granting summary judgment for Vista Rail on Count I of its petition.

LOWENSTEIN, P.J., and HOWARD, J., concur.